KILROY ET UX. t/a 7-Eleven Stores ET AL. *v.*
BOARD OF LICENSE COMMISSIONERS FOR
PRINCE GEORGE'S COUNTY

[No. 131, September Term, 1970.]

*Decided December 11, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Hal C. B. Clagett,* with whom were *John A. Buchanan* and *Sasscer, Clagett, Powers & Channing* on the brief, for appellants.

*John M. McLoughlin* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Mr. and Mrs. John James Kilroy, Sr. (the Kilroys) and Mr. and Mrs. Joseph Edward Clopper, Sr. (the Cloppers), holders of 7-Eleven Stores franchises at different locations in Prince George's County applied for Class A, beer and light wine off-sale licenses. When their applications were denied by the Board of License Commissioners for Prince George's County (the Board), the Kilroys and the Cloppers appealed to the county's circuit court. The cases, which were consolidated for purposes of the appeal, ended with the entry of an order affirming the Board's denial of the licenses. From the order, both the Kilroys and the Cloppers have appealed to this Court. Because the facts are substantially the same and the applicable law is identical in both cases, we shall treat the appeal as if it were the Kilroys'.

We denied the Board's motion to dismiss, which relied on Maryland Rule 835 b (1), and accepted the appeal because there appeared to be a possible variance between the result reached by the lower court in the Kilroys' case and that reached by the same court in *Charles E. Dancy v. Bd. of License Comm'rs* decided in April, 1969, about a year previously. See Code (1957, 1968 Repl. Vol.) Art. 2B, § 175 (f) and compare *Board of Liquor License Comm'rs of Baltimore City v. Leone,* 249 Md. 263, 239 A. 2d 82 (1968) and cases there cited.

Our consideration of the record before the Board and the relevant statutes leads us to the conclusion that the

decision in *Dancy* is not at variance with that in *Kilroy* and that the appeals should be dismissed.

The Dancys, like the Kilroys, held a 7-Eleven franchise. The Board denied the Dancys' application for a Class A license, relying on Code, Art. 2B, § 41 (a-1), which provides:

> "No Class A, B, or D beer, wine, and liquor license, except by way of renewal, shall be granted, transferred, or issued to, or for use in conjunction with, or upon the premises of any business establishment of the type commonly known as chain stores, supermarkets, or discount houses. * * *"

On appeal, the Circuit Court for Prince George's County reversed and ordered the license issued. The rationale of the court's decision was that the Dancys, as 7-Eleven franchisees, were independent contractors, and not managers of a chain store, relying on the tests applied by the Fourth Circuit in *NLRB v. A. S. Abell Co.*, 327 F. 2d 1 (4th Cir. 1964), which was followed in *Taylor v. Local No. 7, Int'l Union of Journeymen Horseshoers* 353 F. 2d 593 (4th Cir. 1965), and those in *Edith A. Anderson Nursing Homes, Inc. v. Walker*, 232 Md. 442, 194 A. 2d 85 (1963).

Later, when the Kilroys' license application came before the Board, it was denied because of the prohibition contained in Code, Art. 2B, § 53 (5):

> "In Prince George's County, no person, partnership, firm or corporation, shall have any interest in more than one license, whether held or controlled by direct or indirect ownership, by stock ownership, interlocking directors or interlocking stock ownership, or in any other manner, directly or indirectly, it being the intention of this section to prohibit any such person, firm, partnership or corporation from having any in-

terest, directly or indirectly, in more than one
license. * * *" 1

The narrow point is whether after the issuance of a
liquor license to the Dancys on the premise that a 7-
Eleven franchise is not a chain store operation, the issu-
ance of a license to a second 7-Eleven franchisee is pre-
cluded by a statutory provision prohibiting any "such
person, firm, partnership or corporation from having any
interest, directly or indirectly, in more than one license."

We think the Board and the court below reached the
right result. We believe that it can be clearly demon-
strated that The Southland Corporation (Southland),
which granted the franchises to the Dancys and to the
Kilroys would have had in the Kilroys' license, had it been
issued, an interest of the kind which should have pre-
cluded the issuance of a second license.

By Article 22 of the "Store Agreement" under which
the Kilroys held a 7-Eleven franchise, the Kilroys under-
took to pay a "7-Eleven Charge" defined as an amount
equivalent to 55% of the Kilroys' gross profit. Of the total
amount, an amount equal to 4% of net sales was allocated
to rent, and the balance was attributed to "rental and per-
sonal property taxes on the leased equipment and main-
tenance, utilities, taxes, insurance and other expenses"
and to "other services," all of which were payable by
Southland.

While it has been held that a landlord has no more in-
terest in the liquor business conducted in premises leased
on a percentage basis, *Fraser v. Hostetter,* 47 Misc. 2d
534, 262 N.Y.S.2d 891 (1965), than he would in a busi-
ness conducted in premises leased for a fixed rent, *Met-*

1. By Chapter 658 of the Laws of 1970, the General Assembly
amended § 53 (5) by adding "franchiser, franchisee, chain store
operation" after the word "person" where it appears in the sec-
ond and eighth lines and the words "by franchise operation, by
chain store operation" after the words "indirect ownership" which
appear in the fifth line, in each case in the text of § 53 (5) which
appears in the 1970 Cumulative Supplement to the Code. By its
terms the Act does not apply to applications made prior to 29
January 1970. The Kilroy and Clopper applications were filed
prior to this date.

*calf v. State Liquor Authority,* 57 Misc. 2d 476, 292 N.Y.S.2d 945 (1968), this holding is limited to cases where the landlord's only interest is in the collection of rent. Whether it may be extended to a franchise operation may well depend on the facts of each case, since when § 53 (5) seeks to reach indirect as well as direct ownership, equitable as well as legal interests may come within the ambit of the statutory proscription. See *Grand Union Co. v. Sills,* 43 N. J. 390, 204 A. 2d 853, 863 (1964).

A situation in which a franchisor has the right to control or regulate the manner in which a franchisee operates cannot be equated with the traditional relationship of landlord and tenant, and such was the case here. Among the more unusual aspects of the "Store Agreement" were provisions giving Southland the right to terminate on 24 hours' notice if the Kilroys' application for a liquor license should be denied or if a license should be "revoked, jeopardized or cancelled" because of some violation; requiring the Kilroys to maintain a $10,500 inventory; stipulating that all receipts be deposited by 3 p.m. of the next banking day in an account under Southland's control, from which payments are to be made to the Kilroys under an elaborate formula; and authorizing Southland to stock the store upon commencement of business and requiring Southland to repurchase the inventory upon termination of the agreement. Additionally, by the terms of a "Security Agreement" executed contemporaneously with the "Store Agreement," the Kilroys granted to Southland a continuing interest in their inventory as the same may exist from time to time to secure performance of the "Store Agreement."

We need grasp only two of the threads of this intricate fabric to dispose of the issue. It cannot be doubted that the agreements contemplated that Southland would have had a security interest in the Kilroys' entire inventory, including their stock of liquor, and that receipts from the sale of any alcoholic beverages sold by the Kilroys would have come under Southland's control by 3 p.m. of the banking day next following the day of sale. To conclude

under such circumstances that Southland would not have had the direct or indirect interest in the Kilroys' license which the statute proscribes would fly in the face of an unequivocal statement of legislative intent.

> *Appeals dismissed. Costs to be equally divided between the appellants and paid by them.*