676 P.2d 1321

STATE of New Mexico,
Plaintiff-Appellee,

v.

Michael Anthony GUZMAN,
Defendant-Appellant.

No. 14450.

Supreme Court of New Mexico.

Jan. 13, 1984.

Rehearing Denied Feb. 23, 1984.

Joseph M. Fine, Albuquerque, for defendant-appellant.

Paul Bardacke, Atty. Gen., Carol Vigil, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

RIORDAN, Justice.

Michael Anthony Guzman (Guzman) was convicted of murder in the first degree for which he received a sentence of death. Guzman was also convicted of attempted first degree murder for which he received nine years imprisonment; criminal sexual penetration in the second degree for which he received nine years; two counts of kidnapping for which he received eighteen years for each count; and tampering with evidence for which he received eighteen months. Guzman appeals. We affirm.

The issues on appeal are:

I. Whether NMSA 1978, UJI Crim. 39.-33 (Repl.Pamp.1982) improperly permits the jury to consider aggravating circumstances not specified by statute when the jury is told to "consider both the defendant and the crime" in weighing aggravating and mitigating circumstances.

II. Whether NMSA 1978, Subsection 31–20A–5(B) (Repl.Pamp.1981) was improperly expanded into two separate aggravating circumstances.

III. Whether evidence supports a finding that the mitigating circumstances outweigh the aggravating circumstances, thereby preventing imposition of the death penalty.

IV. Whether a psychopharmacologist, in stating his opinion, may testify concerning facts given to him by Guzman.

V. Whether Guzman's sentence of death is excessive and/or disproportionate under the circumstances.

VI. Whether Guzman's sentence of death was imposed by the jury under the influence of passion and prejudice.

VII. Whether expert witnesses should have been permitted to state their opinions

that Guzman should not be given the death penalty because of his mental impairment.

VIII. Whether the trial judge had authority to modify the jury's determination of Guzman's death sentence; and if so, whether it erred in not doing so.

IX. Whether NMSA 1978, Subsection 31–20A–6(H) (Repl.Pamp.1981), which specifies that cooperation with authorities is a mitigating circumstance, is constitutional.

**FACTS**

According to the trial testimony of Colleen Bush (Bush), on April 5, 1981, at approximately 9:00 p.m., after spending the evening studying, Bush and Julie Jackson (Jackson) walked to a restaurant located across from the University of New Mexico for some coffee. At approximately 11:30 p.m., Bush and Jackson left the restaurant to return to Bush's apartment. While walking to the apartment a man, later determined to be Guzman, walked toward Bush and Jackson. After he passed them, Guzman turned and put his arms around their necks. Guzman first placed a knife to Jackson's neck. He then placed the knife against Bush's neck.

Guzman forced Bush and Jackson into his car and then drove around for awhile. During the time Guzman was driving, he kept saying that he was lonely and wanted someone to talk to. Guzman eventually stopped the car in an arroyo and said, "O.K., ladies, the fun's over." Guzman brandished the knife, told Jackson to take off her clothes, and said, "If you don't do it your friend is going to get hurt really bad." At that time, Guzman held the knife to Bush's chest. Guzman also told Bush that he had a gun and that he was going to shoot her. Jackson took off her clothes and threw them to the back seat.

Next, Guzman ordered Bush to the back of his car and forced her to get in the trunk. Bush got out of the trunk by punching through the canvas and crawling into the back seat. She then jumped out of the car and started running. Guzman chased and caught her. Guzman then stabbed Bush in the back, chest, and neck a number of times. Guzman stated, "All my problems are because of you Anglos."

Bush asked him to leave her alone so that she could die in peace. Guzman left for a few minutes and then came back and started stabbing her again in the chest and neck. Bush played dead, and Guzman left in his car. Later, Bush crawled to the highway. Someone in a passing vehicle eventually stopped to aid her.

The doctor who treated Bush testified that she had multiple stab and slash wounds, many close to vital organs.

Later that morning, Jackson's nude body was found. The autopsy showed that Jackson died from a stab wound to her chest that penetrated her heart. There was also evidence of sexual intercourse.

Guzman later turned himself in to the authorities.

*I. UJI Crim. 39.33*

Guzman argues that UJI Crim. 39.33 is unconstitutional because it permits the jury to consider aggravating circumstances not permitted by NMSA 1978, Section 31–20A–5 (Repl.Pamp.1981), and because it permits the death penalty to be imposed in an arbitrary manner which is not rationally reviewable.

The pertinent part of UJI Crim. 39.33 states:

If you have unanimously agreed on a finding that * * * [one or more of the aggravating circumstances charged were] present, you must then consider the penalty to be imposed in this case. In determining the penalty to be imposed, you must consider all of the evidence admitted during this sentencing proceeding and the evidence admitted during the trial in which the defendant was found guilty of murder. You must then consider whether there are any mitigating circumstances.

If you find there are mitigating circumstances, you must then weigh the mitigating circumstances against * * * [one or more aggravating circumstances] you have found in this case. After weighing the aggravating circumstances and the mitigating circumstances, weighing them against each other, and *con-*

*sidering both the defendant and the crime,* you shall determine whether the defendant should be sentenced to death or life imprisonment. (emphasis added) (footnotes omitted).

Guzman argues that this phrase, "considering both the defendant and the crime" (which is directly from NMSA 1978, Subsection 31–20A–2(B) (Repl.Pamp.1981)), allows the jury to consider "the defendant and the crime" as an aggravating circumstance that is not specified by our death penalty statute.

UJI Crim. 39.33, in which this phrase appears, is not the instruction that specifies for the jury what alleged aggravated circumstance is relied upon by the State. The jury is clearly told by the other instructions which aggravating circumstance or circumstances must be proved before the jury may even consider the death penalty.

The jury in the present case was given NMSA 1978, UJI Crim. 39.30, 39.31 and 39.33 (Repl.Pamp.1982). Under UJI Crim. 39.30, mitigating circumstances were set forth for the jury to consider on behalf of Guzman. Under UJI Crim. 39.31, the jury was required to make two determinations: first, whether the State proved beyond a reasonable doubt that the murder was committed under the *aggravating circumstances as charged;* and second, whether the mitigating circumstances outweighed the aggravating circumstances. *State v. Garcia,* 99 N.M. 771, 664 P.2d 969, *cert. denied,* — U.S. —, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983). Once these threshold determinations were made, the jury was instructed under UJI Crim. 39.33, that they must weigh the aggravating circumstances and mitigating circumstances and consider Guzman and the crime in determining whether to sentence him to death or life imprisonment.

■ Guzman asserts that the language of UJI Crim. 39.33, in effect, allows nonstatutory aggravating circumstances to be considered, and that it is therefore unconstitutional. We hold that UJI Crim. 39.33 does not allow the consideration of nonstatutory aggravating circumstances. UJI Crim. 39.33 relates to the weighing process, not to the threshold determination of whether an aggravating circumstance exists.

We have previously held that UJI Crim. 39.33 does not allow the death penalty to be imposed in an arbitrary manner which is not rationally reviewable. *State v. Cheadle* (1983); *State v. Garcia.* There is no indication that the jury is to consider nonstatutory aggravating circumstances. Therefore, we again find no fault with UJL Crim. 39.33.

## II. Subsection 31–20A–5(B)

Guzman asserts that Subsection 31–20A–5(B) was expanded into two separate aggravating circumstances which under NMSA 1978, UJI Crim. 39.13 (Repl.Pamp. 1982), should only be one. Subsection 31–20A–5(B) provides as an aggravating circumstance:

[That] the murder was committed with intent to kill in the commission of or attempt to commit kidnaping, criminal sexual contact of a minor or criminal sexual penetration.

At the sentencing phase, the jury was given three separate aggravating circumstances for consideration: Subsection 31–20A–5(B) for the murder of Jackson committed during the commission of kidnaping; Subsection 31–20A–5(B) for the murder of Jackson committed during the commission of criminal sexual penetration; and NMSA 1978, Subsection 31–20A–5(G) (Repl.Pamp. 1981) for the murder of Jackson as a witness to a crime or person likely to become a witness to a crime.

The jury unanimously found beyond a reasonable doubt each of these aggravating circumstances, and for each of these aggravating circumstances unanimously agreed that Guzman should be sentenced to death.

Guzman does not allege that the aggravating circumstance charged under Subsection 31–20A–5(G) was improper. Guzman's contention is that the first two aggravating circumstances (murder in commission of kidnaping and murder in commission of

criminal sexual penetration) should not have been set forth as two separate aggravating circumstances, but should have been presented to the jury in the alternative.

 Guzman claims that under Subsection 31–20A–5(B), the State may select one of the crimes listed or charge in the alternative, but to select two of them increases the number of crimes for which a defendant may be put to death, thereby unconstitutionally expanding the statutory grounds. However, we assume that when the Legislature used the conjunction "or", they intended that *either* of the crimes could be used as an aggravating circumstance, the basis from which the death penalty can be imposed. The fact that they are contained in one subsection of the statute is immaterial.

 In any event, as previously stated in *State v. Cheadle*, when two or more aggravating circumstances are found, the invalidation of one will not invalidate the sentencing proceeding unless the invalidation is due to constitutionally protected conduct. *See, e.g., Zant v. Stephens*, —— U.S. ——, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

### III. *Mitigating v. Aggravating Circumstances*

Guzman asserts that the mitigating circumstances clearly outweighed the aggravating circumstances; therefore, a sentence of life imprisonment should have been imposed.

After considering the evidence, weighing the mitigating and aggravating circumstances, and unanimously finding that the aggravating circumstances existed, the jury unanimously agreed that Guzman should be sentenced to death on each of the aggravating circumstances. During the hearing concerning Guzman's motion for a new trial, the trial judge stated, "Had I, as trial judge been weighing the aggravating circumstances against the mitigating circumstances, I would have reached a different conclusion than the jury reached; and I would have imposed a life sentence."

The jury was presented with the facts and evidence. Seven mitigating circumstances were put forth to the jury. These mitigating circumstances included testimony concerning Guzman's extensive mental and emotional problems; however, the jury after weighing the mitigating and aggravating circumstances found that the seven mitigating circumstances did not outweigh the aggravating circumstances.

 It is our duty as an appellate court to review the record, evidence, and determination of the jury. It is not our duty to re-try a case for what may be a better result. *State v. Garcia.* We are required to assure that a defendant is not put to death if the evidence would support a finding that the mitigating circumstances outweigh the aggravating circumstances. This is very difficult to do when a jury has weighed the evidence and determined that the death penalty is the appropriate penalty. In any event, the trial judge could not make such a ruling. A review of the evidence in this case supports the jury's determination. *See State v. Cheadle.*

### IV. *Dr. Ferraro's Testimony*

Dr. Ferraro, a psychopharmacologist, was called by Guzman to testify concerning the quantity of medication and alcohol consumed by Guzman the evening of the murder. Guzman told Dr. Ferraro about this consumption two days prior to Dr. Ferraro's appearance at trial. At the time of Dr. Ferraro's testimony, there was no other evidence introduced during trial that Guzman had consumed any alcohol or taken medication the night of the murder.

The trial court was concerned with a hearsay problem and the factual basis of Dr. Ferraro's proposed opinion. The trial court allowed Dr. Ferraro to testify as an expert concerning a hypothetical question as to the medication and the effect of alcohol on this medication, but not as to what Guzman told him. The trial court, however, allowed Guzman to re-call Dr. Ferraro if the facts were placed in evidence.

NMSA 1978, Evid.Rule 702 (Repl.Pamp. 1983) provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand *the evidence* or to

determine *a fact in issue*, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise. (emphasis added.)

■ Dr. Ferraro testified hypothetically as to what effect the particular medication and alcohol would have on a person who had extreme emotional problems. The trial court did not allow Dr. Ferraro to testify as to what Guzman told him two days before trial about the medication and alcohol he had ingested the night of the murder. There was no "evidence" or "fact in issue" at the time the testimony was offered; and therefore, there was no foundation for the testimony that Guzman had taken medication and alcohol the night of the murder. The trial court correctly determined that Dr. Ferraro could not testify as to the particular effect on Guzman until the "evidence" or "fact in issue" was properly in evidence. *See State v. Elliott*, 96 N.M. 798, 635 P.2d 1001 (Ct.App.1981); *see also State ex rel. State Highway Department v. Fox Trailer Court*, 83 N.M. 178, 489 P.2d 1176 (1971). To allow otherwise would permit a defendant to offer testimony which he wishes to be admitted into evidence without it being subjected to cross-examination.

## V. *Proportionality Review*

Guzman asserts that his sentence was excessive and/or disproportionate to the penalty imposed in similar cases.

The jury was instructed twice on the aggravating circumstances of Subsection 31–20A–5(B), and once on the aggravating circumstance of Subsection 31–20A–5(G). The jury unanimously found beyond a reasonable doubt that each of the three aggravating circumstances existed and that each aggravating circumstance warranted the death penalty.

■ In *State v. Garcia*, we set forth the guidelines for proportionality review. We have compared Guzman's sentence with the facts and sentences in the cases of *State v. Hutchinson*, 99 N.M. 616, 661 P.2d 1315 (1983), *State v. Gilbert*, 100 N.M. 392, 671 P.2d 640, 22 SBB 1173 (1983), *petition*

*for cert. filed*, 52 U.S.L.W. —— (U.S. Dec. 16, 1983) (No. 83–5843), *State v. Cheadle*, and *State v. Simonson*, 100 N.M. 297, 669 P.2d 1092 (1983). We do not find that Guzman's sentence was disproportionate to other appropriate "review" cases. We also find that Guzman's sentence was not excessive punishment for the crimes committed in this case.

■ Proportionality review in New Mexico is first and foremost directed to the particular circumstances of a crime and the specific character of the defendant. In reviewing the jury's determination, we will not re-try the case for what may be a better result. *State v. Garcia.*

## VI. *Passion and Prejudice of Jury*

Guzman asserts three separate instances in which the jury was inflamed and impassioned. He cites no authority, but claims that the death penalty could not be imposed because the jury acted under the influence of passion or prejudice which would result in the imposition of the death penalty under arbitrary facts. After reviewing the record, we disagree.

The three instances Guzman asserts are: 1) at the conclusion of the trial evidence, the court reporter informed the trial judge and parties that a juror had seen Guzman's younger brother and a friend in the jury lounge more than once; 2) an affidavit of an attorney who was not involved in this case, stating that she was informed by the husband of a juror that he and his wife were terrified regarding their personal safety and that the husband was taking a pistol to work; and 3) a note from the jury that requested the trial judge provide an escort after the verdict at sentencing.

■ Concerning the first incident, after being advised that Guzman's brother and a friend were in the jury room to use vending machines, both were admonished to stay away from the jury room. At that point, Guzman requested a mistrial. The State requested the trial court to question and admonish the jury. The trial judge agreed to question and admonish the jury, but

denied the mistrial motion. Guzman decided he wanted the matter ignored and did not want the jury either questioned or admonished.

Concerning the second incident, the record shows that this affidavit was filed June 18, 1982, a month after the trial was over. The affidavit stated that the attorney was informed during the recess of the trial, after verdict and before sentencing, that the juror and her husband were frightened for their personal safety and that the juror's husband was carrying a gun to work because of this case. Counsel does not cite any authority for the proposition that somehow this shows that the jury acted under passion and prejudice.

Finally, counsel again claims, without citing authority to support the proposition, that the jury's request to be escorted out of the courthouse in a manner to avoid the television cameras and other news media showed that the jury decided the case under the influence of passion and prejudice.

We have reviewed the record of these incidents and determine that none of them, either together or individually, shows any passion or prejudice on behalf of the jury.

## VII. *Testimony of Expert Witnesses*

Guzman called Dr. Reed and Dr. Fink to testify that in their opinion, Guzman's mental impairment alone should preclude him from receiving the death penalty. The trial court did not allow this testimony.

Throughout the trial, evidence was presented concerning Guzman's emotional and mental condition. The question of whether Guzman should receive the death penalty is a matter of fact to be decided by the trier of fact. NMSA 1978, § 31–20A–1 (Repl.Pamp.1981).

As previously mentioned, Rule 702 provides in pertinent part: "[i]f * * * specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert * * * may testify thereto. * * *" In the present case, the jury, having heard all the evidence, was qualified to decide this issue. Therefore, we determine that the trial court properly excluded the testimony of the expert witnesses on the issue of whether the death penalty should, in their opinion, be imposed.

## VIII. *Modification of Death Sentence*

Guzman asserts that because the trial judge disagreed with the jury's imposition of the death penalty, he should have modified the sentence.

NMSA 1978, Subsection 31–20A–1(D) (Repl.Pamp.1981) provides:

In a jury sentencing proceeding, the judge shall give appropriate instructions and allow argument and *the jury shall retire to determine the punishment to be imposed* * * *. (emphasis added.)

NMSA 1978, Section 31–20A–3 (Repl. Pamp.1981) provides in pertinent part:

In a jury sentencing proceeding in which the jury unanimously finds beyond a reasonable doubt and specifies at least one of the aggravating circumstances ... and unanimously specifies the sentence of death ... the court *shall* sentence the defendant to death. (emphasis added.)

In a jury proceeding, the jury determines whether to impose the death penalty; the trial judge must abide by this determination. If the sentence is not properly imposed, it is up to the New Mexico Supreme Court to review the sentence. This Court, not the trial judge, automatically reviews the jury's decision to impose the death penalty. NMSA 1978, § 31–20A–4 (Repl.Pamp.1981). The trial judge, therefore, correctly ruled that it had no authority to modify the death sentence in a jury proceeding.

## IX. *Subsection 31–20A–6(H)*

Guzman asserts that Subsection 31–20A–6(H) is unconstitutional. Subsection 31–20A–6(H), states:

The mitigating circumstances to be considered by the sentencing court or the jury pursuant to the provisions of Section 3[31–20A–2 NMSA 1978] of this act

shall include but not be limited to the following:

\* \* \* \* \* \*

H. the defendant cooperated with authorities.

 Guzman asserts that this mitigating circumstance has a chilling effect under the Fifth Amendment and Fourteenth Amendment on his right to remain silent. U.S. Const. amend. V and XIV. Guzman ignores UJI Crim. 39.30 requiring the submission of mitigating circumstances to the jury. The Use Note to UJI Crim. 39.30 points out that only those mitigating circumstances which are supported by evidence, are to be given. Therefore, a defendant who does not cooperate with the authorities is not affected. Guzman's argument is similar to arguing that it is unconstitutional to require a defendant to be cross-examined and thereby impeached, if he desires to testify in his own defense. This proposition has been upheld. *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). However, the jury in the present case was instructed that they *should* consider Guzman's cooperation with the authorities. Guzman was not penalized for his cooperation.

We find the statute constitutional.

### CONCLUSION

After reviewing the record and transcript, we conclude that Guzman was properly convicted and that the death sentence was properly imposed. Therefore, the judgment of the jury that Guzman be punished by death is affirmed. This case is remanded to the trial court to set the date of execution not less than sixty nor more than ninety days from the date of the mandate on the judgment pursuant to NMSA 1978, Section 31-14-1.

IT IS SO ORDERED.

FEDERICI, C.J., and PAYNE and STOWERS, JJ., concur.

SOSA, Senior Justice, specially concurring on all issues except the issue of the imposition of death.

SOSA, Senior Justice, specially concurring.

I concur with the affirmance of the defendant's convictions for the reasons stated in the majority opinion. However, I respectfully dissent on the issue of the imposition of the death sentence. I would hold that New Mexico's death penalty statute is unconstitutional and would remand this cause for the imposition of a sentence of life imprisonment for the reasons stated in my specially concurring opinion in *State v. Garcia*, 99 N.M. 771, 664 P.2d 969, *cert. denied*, —— U.S. ——, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983).