747 A.2d 1209

**Heath William BURCH**

v.

**STATE of Maryland.**

**No. 56, Sept. Term, 1999.**

Court of Appeals of Maryland.

March 13, 2000.

William W. Kanwisher (H. Mark Stichel, Gohn, Hankey & Stichel, LLP, on brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

Heath William Burch was sentenced to death by a jury for the murders of Robert Davis and Cleo Davis. This Court affirmed the verdict and one of the two death sentences. *See Burch v. State*, 346 Md. 253, 696 A.2d 443 (1997). Following the denial of his petition for certiorari in the United States Supreme Court, 522 U.S. 1001, 118 S.Ct. 571, 139 L.Ed.2d 410 (1997), and the denial of all his claims for post-conviction relief, he requested the trial judge to set a hearing on a Motion for Reconsideration of Sentence he filed in 1996. The issue we must decide in this case is whether the trial judge properly concluded that he had no authority under Maryland Rule 4–345(b) to modify a jury-determined sentence of death. We shall hold that when a judge imposes a sentence of death in accordance with a jury determination, Maryland Rule 4–345(b) is inapplicable and the Circuit Court has no authority under that rule to modify the sentence.[1]

On March 22, 1996, Appellant Heath William Burch was convicted by a jury in the Circuit Court for Prince George's County of multiple offenses, including felony murder and premeditated murder of Robert and Cleo Davis in their home. After the sentencing hearing, the jury returned a verdict of death. On April 10, 1996, the Hon. Steven I. Platt sentenced Burch to death for the murders of Robert and Cleo Davis. The facts and circumstances surrounding Appellant's guilt and the aggravating circumstances justifying the sentence of death can be found in great detail in *Burch v. State*, 346 Md. 253, 696 A.2d 443 (1997).

On June 4, 1996, Burch filed a motion in the trial court for reconsideration of sentence pursuant to Maryland Rule 4–345(b), and at the same time, he requested that the trial court

---

1. In discussing Rule 4–345(b), we refer only to the provision regarding the court's revisory power over a sentence upon motion within 90 days after its imposition, not to the court's revisory power thereafter in case of fraud, mistake or irregularity, or to its power to correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

hold the motion *sub curia* until the parties requested a hearing. The trial judge agreed.

The case meanwhile proceeded on direct appeal to this Court. We affirmed the verdicts of guilt, and one of the death sentences; we vacated the second sentence of death. *See Burch v. State*, 346 Md. 253, 696 A.2d 443 (1997). The trial court denied Burch's petition for post-conviction relief and this Court denied Burch's subsequent application for leave to appeal.

On January 28, 1999, pursuant to the parties' request, the Circuit Court held a hearing on Burch's 1996 motion for reconsideration of sentence. Judge Platt framed the issue clearly, as follows:

> Does a sentencing judge possess the authority pursuant to Rule 4–345 of the Maryland Rules to reconsider a sentence of death imposed by him on a defendant in accordance with Art. 27 § 413(k)(1), after a jury has determined that a sentence of death *shall* be imposed under the provisions of this section?

Judge Platt ruled that he lacked authority to reconsider a death sentence imposed pursuant to a jury determination and held that a jury-determined sentence of death cannot be the proper subject of a Rule 4–345 motion. The Circuit Court reasoned that a fair reading of the statute and the rule lead to one conclusion—that there is only one sentence available for a sentencing judge to impose when a jury determines a sentence of death. Thus, the Circuit Court does not have the authority to reconsider that sentence. Accordingly, he denied the motion. We agree with the trial judge.

▆▆ Maryland Code (1957, 1996 Repl.Vol., 1999 Supp.) Article 27, §§ 413 and 414 [2] set forth the sentencing scheme in Maryland for capital cases. Section 413(b) provides that a capital sentencing proceeding shall be conducted before a jury or before the court alone if the defendant waives a jury

---

[2]. Unless otherwise indicated, all subsequent statutory references shall be to Maryland Code (1957, 1996 Repl.Vol., 1999 Supp.) Art. 27.

proceeding. The statute provides that "[i]f the jury determines that a sentence of death shall be imposed under the provisions of this section, then the court *shall* impose a sentence of death." Art. 27, § 413(k)(1) (emphasis added).

In Art. 27, § 414, the Legislature provided for review of death sentences. The statute provides, in pertinent part, as follows:

(a) Review by Court of Appeals required.—Whenever the death penalty is imposed, and the judgment becomes final, the Court of Appeals shall review the sentence on the record.

* * * * * *

(e) Considerations by Court of Appeals.—In addition to the consideration of any errors properly before the Court on appeal, the Court of Appeals shall consider the imposition of the death sentence. With regard to the sentence, the Court shall determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) Whether the evidence supports the jury's or court's finding of a statutory aggravating circumstance under § 413(d); and

(3) Whether the evidence supports the jury's or court's finding that the aggravating circumstances outweigh the mitigating circumstances.

In addition, § 413(*l*) provides that the Court of Appeals "may adopt rules of procedure to govern the conduct of a sentencing proceeding conducted pursuant to this section, including any forms to be used by the court or jury in making its written findings and determinations of sentence." Maryland Rule 4–343 governs the procedures to be followed in a capital sentencing. As to the review of sentence, the rule states that "[a]t the time of imposing sentence, the judge shall advise the defendant that the determination of guilt and the sentence will be reviewed automatically by the Court of Ap-

peals, and that the sentence will be stayed pending that review." Rule 4–343(i).

Rule 4–345 addresses the power of a trial court to revise a sentence, providing, in pertinent part, as follows:

(a) Illegal sentence. The court may correct an illegal sentence at any time.

(b) Modification or reduction—Time for. The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

Before this Court, Appellant argues that Rule 4–345(b) applies to capital cases and that he is entitled under the rule to request the trial judge who presided at a jury sentencing to modify the death sentence determined by the jury. He reasons that Rule 4–345 contains no exception for the death penalty to the court's revisory power over sentences, and that Art. 27, § 413 contains no limitation on the court's revisory power over sentences. In Burch's view, § 413(k) only requires the judge to impose a death sentence in accord with the jury verdict and is not a limitation on the judge's power to modify sentences. In support of his argument, he notes that where the Legislature has intended to withdraw from those sentenced to death post-sentence rights enjoyed by other defendants, it has done so explicitly. *See* Art. 27 § 645JA (providing right to sentence review by a three-judge panel to defendants sentenced to more than two years imprisonment, but not to those sentenced to death). Thus, he concludes that if the Legislature had intended to preclude reconsideration by

284

the trial judge in death penalty cases, it would have said so. Therefore, Rule 4–345(b) should apply to death sentences just as it applies to all other sentences.

Finally, Appellant argues that to refuse to consider the merits of his motion to modify his sentence because of his status as one sentenced to death violates the Equal Protection and Due Process Clauses and Eighth Amendment to the United States Constitution, and the Maryland Declaration of Rights, because the refusal denies a death-sentenced defendant the ability to bring information previously unknown to the defendant to the attention of a court after sentencing, when non-capital defendants could present this information in a sentence modification hearing. Appellant asserts that the modification procedure under Rule 4–345(b) allows the trial court to consider matters that occur after sentencing, and that such matters cannot be raised in the course of the appellate and post-conviction proceedings provided by the death penalty statute and the post-conviction procedure statute.

The State argues that Art. 27, §§ 413 and 414, setting out the scheme by which a death sentence is imposed and reviewed, control the review to which a death penalty defendant is entitled, to the exclusion of the sentence modification procedure provided by Rule 4–345(b). Section 413(k), as noted above, provides that the trial judge shall impose the death penalty after a jury returns a death verdict, and § 414 provides for automatic and exclusive review of the sentence by this Court.

We agree with the trial judge that Rule 4–345(b) has no applicability to a jury-determined death sentence, and thus a trial judge cannot reconsider or modify a death sentence imposed pursuant to a jury determination because to do so would be in conflict with the legislative scheme established for capital cases. "Shall" ordinarily indicates a mandatory intent, unless the context of the statute indicates otherwise. *Hirsch v. Md. Dep't of Nat'l Resources*, 288 Md. 95, 116, 416 A.2d 10, 21 (1980); *Pope v. Secretary of Personnel*, 46 Md.App. 716, 717, 420 A.2d 1017, 1018 (1980). When a jury returns a

verdict of death, the trial judge must impose one sentence—death. The clear, mandatory statutory language of Art. 27, § 413 leaves no discretion with the trial judge, who is bound by the jury's decision, to modify the penalty of death, absent the existence of an illegal sentence. Pursuant to the statute, it is this Court, rather than the Circuit Court, that reviews the death sentence to determine whether the sentence may be legally imposed. The review of a death sentence by the Court of Appeals, and not the trial judge, is an integral part of the sentencing structure created by the Legislature, and to permit a trial judge to reduce a death sentence determined by the jury would be in conflict with the legislative mandate.

A similar view is expressed in 62 Md. Op. Att'y. Gen. 109 (1977). Discussing the Court of Appeals' exclusive review of death sentences, the Attorney General wrote to Governor Marvin Mandel:

> Unless the defendant has waived a jury sentencing proceeding, the function of the trial court is to impose the sentence returned by the jury. Whenever the death penalty is imposed, automatic, expedited, and exclusive jurisdiction to review the sentence (consolidated with any other assigned error) is conferred upon the Court of Appeals. Such review must include a report of the trial court containing the court's recommendation as to whether or not imposition of the death penalty is justified in the case.

*Id.* at 114.

Rule 4–343 also supports the view that modification of a death sentence is not available under Rule 4–345(b). Rule 4–343(i) provides that at the time of imposing a sentence of death,

> the judge shall advise the defendant that the determination of guilt and the sentence will be reviewed automatically by the Court of Appeals, and that the sentence will be stayed pending that review.

At the time of imposing a sentence of life imprisonment, by contrast,

the court shall cause the defendant to be advised in accordance with Rule 4–342(h).

Rule 4–342(h) provides that

[a]t the time of imposing sentence, the court shall cause the defendant to be advised of any right of appeal, any right of review of the sentence under the Review of Criminal Sentences Act, any right to move for modification or reduction of sentence, and the time allowed for exercise of these rights.

Thus a defendant sentenced to life imprisonment must be advised of the right to request modification of sentence by the trial judge, but a defendant sentenced to death must be advised only of review by this Court. This contrast indicates that defendants have a right to request modification of sentence under Rule 4–345(b) only if they have not been sentenced to death.

■ Appellant cites no authority for his due process or equal protection arguments. While a non-capital defendant is entitled, upon timely request, to a reconsideration of sentence pursuant to Rule 345(b), the capital defendant is entitled to numerous other safeguards. Appellant has not been denied due process or equal protection. *See Hopkinson v. Shillinger*, 645 F.Supp. 374, 408–09 (D.Wyo.1986), *aff'd in part and remanded in part on other grounds*, 866 F.2d 1185 (10th Cir.1989), *aff'd en banc*, 888 F.2d 1286 (10th Cir.1989); *cf. State v. Cheadle*, 102 N.M. 743, 700 P.2d 646 (1985).

The legislative history of the present Maryland death penalty statute supports our conclusion that a trial judge does not have the authority to modify a jury-determined sentence of death. The present death penalty statute, 1978 Maryland Laws ch. 3, at 6 (codified as amended at Art. 27, §§ 412–414, 645JA, and at Maryland Code (1973, 1998 Repl.Vol., 1999 Supp.) § 12–307 of the Courts and Judicial Proceedings Article), was the product of the General Assembly's effort to conform Maryland's death penalty law to the constitutional guidelines laid down by the United States Supreme Court in landmark decisions in 1972 and 1976. In *Furman v. Georgia*,

408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Court for the first time reversed death sentences on the ground that they constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. There was no majority rationale; the Court divided five to four and produced nine separate opinions. Only Justices Brennan and Marshall believed the death penalty was unconstitutional under all circumstances. *See id.* at 286, 92 S.Ct. 2726 (Brennan, J., concurring); *id.* at 358, 92 S.Ct. 2726 (Marshall, J., concurring). The least common denominator among the opinions supporting the judgment was that the death penalty was unconstitutional if imposed under a statute giving the sentencing authority unguided discretion arbitrarily to impose or refrain from imposing a sentence of death. *See id.* at 255–57, 92 S.Ct. 2726 (Douglas, J., concurring); *id.* at 274–76, 92 S.Ct. 2726 (Brennan, J., concurring); *id.* at 309–10, 92 S.Ct. 2726 (Stewart, J., concurring); *id.* at 313–14, 92 S.Ct. 2726 (White, J., concurring); *id.* at 364–66, 92 S.Ct. 2726 (Marshall, J., concurring). It was in the wake of *Furman* that this Court invalidated Maryland's former discretionary death penalty statute, *see Bartholomey v. State,* 267 Md. 175, 181–84, 297 A.2d 696, 699–701 (1972), and that the General Assembly removed the discretion from the sentencing process, establishing a mandatory death penalty regime, *see* 1975 Maryland Laws ch. 253, at 1251–52 (codified at Maryland Code (1957, 1976 Repl.Vol.) Art. 27, § 413).

Resolving the obscurity of *Furman,* the Supreme Court considered the constitutional status of the death penalty in five cases decided July 2, 1976. *See Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). In *Roberts* and *Woodson* the Court struck down mandatory death penalty statutes similar to the 1975 Maryland statute. *See Roberts,* 428 U.S. at 331–36, 96 S.Ct. 3001; *Woodson,* 428 U.S. at 292–99, 96 S.Ct.

2978. In *Jurek, Proffitt,* and *Gregg,* the Court upheld statutes on the ground that the statutes gave the sentencing authority some discretion, but guided and limited the use of that discretion sufficiently to minimize the danger of arbitrary and capricious imposition of the death penalty. *See Jurek,* 428 U.S. at 276, 96 S.Ct. 2950; *Proffitt,* 428 U.S. at 259–60, 96 S.Ct. 2960; *Gregg,* 428 U.S. at 206–07, 96 S.Ct. 2909.

When this Court followed *Roberts* and *Woodson* by invalidating Maryland's 1975 mandatory death penalty scheme, *see Blackwell v. State,* 278 Md. 466, 471–73, 365 A.2d 545, 548–49 (1976), the General Assembly again embraced the task of crafting a constitutional death penalty system. *Jurek, Proffitt* and *Gregg* provided three "approved" models—the statutes of Texas, Florida and Georgia. The most important differences among the three models concern the different ways in which they guide the sentencing authority's discretion and treatment of aggravating and mitigating circumstances. *See Jurek,* 428 U.S. at 269–274, 96 S.Ct. 2950; *Proffitt,* 428 U.S. at 247–51, 96 S.Ct. 2960; *Gregg,* 428 U.S. at 162–68, 96 S.Ct. 2909. The differences among the models that are of significance to the present case, however, concern the respective roles of the jury and judge in sentencing.

In the Georgia and Florida systems, as they existed at the time of the Court's decisions in 1976, when the defendant elected to be tried by jury, the jury determined at the guilt-or-innocence phase of the trial whether the defendant had committed a death-eligible offense. If the answer was yes, then the sentencing phase followed, and the jury considered whether the death penalty should be imposed. *See Proffitt,* 428 U.S. at 248–49, 96 S.Ct. 2960; *Gregg,* 428 U.S. at 162–66, 96 S.Ct. 2909.

In Georgia, the jury was required to consider whether one or more statutory aggravating circumstances existed. The sentence of death could only be imposed if the jury found one or more statutory aggravating circumstance to exist. If the jury found the existence of an aggravating circumstance, the jury was then required to consider evidence of mitigating

circumstances. Having done so, it could return a verdict of either death or life imprisonment; and even if it found no mitigating circumstance to exist, it could return a verdict of life imprisonment. *See Gregg* at 163–66, 96 S.Ct. 2909. The trial judge was bound to impose the sentence the jury returned. *See id.* at 166, 96 S.Ct. 2909.

The Florida system was different from the Georgia system in two significant ways. First, the sentencing jury was required not only to find an aggravating circumstance and to consider mitigating circumstances before it could return a death verdict, but also to weigh the aggravating circumstances against the mitigating circumstances; it could determine that the death penalty should be imposed only if it concluded that the mitigating circumstances did not outweigh the aggravating circumstances. *See Proffitt,* 428 U.S. at 248, 96 S.Ct. 2960. Second, the jury's determination was advisory only. The trial judge was required to follow the same steps the jury followed and to reach an independent conclusion about whether to sentence the defendant to death or life imprisonment. *See id.* at 248–49, 96 S.Ct. 2960.

There were significant structural differences between the Florida and Georgia systems on the one hand and the Texas system approved by the Supreme Court in *Jurek* on the other; we will not detail these here, as the present Maryland system is more similar to the Florida and Georgia systems than to the Texas system.[3]

Maryland legislative history indicates that in the 1977 and 1978 sessions, the General Assembly examined the elements of several different capital punishment systems, and in 1978 made a clear and deliberate choice to preclude a trial judge from imposing a reduced sentence when a jury returns a death verdict. The bill that, in 1978, became what is substantially

---

**3.** 1978 Maryland Laws ch. 3 included concepts from Tentative Draft # 9 of the Model Penal Code prepared by the American Law Institute, as well as the Florida, Georgia and Texas statutes, but no one statute was a model for the legislation. *See* 62 Md. Op. Att'y. Gen. 109, 113 (1977).

the present law was introduced on behalf of the Administration as S.B. 374 in the 1977 session and again, with certain changes, in the 1978 session. The bill was drafted by the offices of the Chief Legislative Officer to the Governor and the Attorney General. *See* Memorandum from Thomas J. Peddicord, Chief Legislative Officer, to the General Assembly 19 (Dec. 14, 1977) (available at the Maryland Department of Legislative Reference Library, Bill File for S.B. 374 (1978)). In a memorandum to the General Assembly, the Chief Legislative Officer explained why the drafters chose to make the jury's sentencing decision binding upon the trial judge, as in Georgia, rather than advisory, as in Florida.

> [One] reason to reject the actual Florida system is that the Florida jury renders an "advisory" sentence, and the court then must weigh the factors and decide upon a sentence. Aside from the duplication of effort involved, such a procedure departs from the traditional role of the jury in Maryland in capital cases. See former § 413 of Article 27 (1971 Replacement Volume).[4]  Pursuant to [the bill], the Maryland court will be bound by the jury's determination of sentence.

*Id.* at 37.

In addition, the memorandum also explains the provision that became Art. 27, § 414(b). Section 414(b) provides that when the record of the trial is transmitted to the Court of Appeals for automatic review, the papers shall include a report from the trial judge:

> The report shall be in the form of a standard questionnaire prepared and supplied by the Court of Appeals of Maryland and shall include a recommendation by the trial court as to

---

4.  Former Art. 27, § 413, referred to here, provided that the jury could return a verdict of "guilty without capital punishment." Thus, the statute provided the jury a means to prevent the imposition of the death penalty; it did not, however, provide the jury a means to require the imposition of the death penalty. *See* Maryland Code (1957, 1971 Repl.Vol.) Art. 27, § 413.

whether or not imposition of the sentence of death is justified in the case.

The memorandum explains that

[t]he intention of [§ 414] is to provide a rational process for the review of cases in which the death penalty has been imposed. In this instance, the trial court judge is entitled to record his personal opinion about the justification of the death sentence. This is intended to allow a judge to disagree with a jury's determination that the death sentence be imposed under Section 413, *since he cannot overrule the sentence determination.*

*Id.* at 41 (emphasis added).[5] Section 414(b), and this explanation of it, indicate that the judge is not empowered to alter a death sentence imposed upon a jury's death verdict at any stage.

Two bills competing with S.B. 374 were also introduced: S.B. 106 in 1977 and S.B. 373 in 1978. Both employed the advisory jury verdict model. Governor Mandel vetoed S.B. 106. *See* Governor's veto message, S.B. 106, 1977 Maryland Laws at 3771. The Senate Judicial Proceedings Committee reported unfavorably on S.B. 373. *See* 1978 MARYLAND SENATE JOURNAL 1322 (Mar. 3, 1978). A memorandum from the Chief Legislative Officer to the Senate Judicial Proceedings Committee describes the difference between the advisory and binding jury determinations as "the critical difference" between S.B. 373 and S.B. 374, the Administration's bill. *See* Memorandum from Thomas J. Peddicord, Chief Legislative Officer, to the Senate Judicial Proceedings Committee 1 (Feb. 1, 1978) (available at the Maryland Department of Legislative Reference Library, Bill File for S.B. 374 (1978)).

We conclude from our review of the legislative history that the General Assembly, in twice rejecting the advisory jury

---

**5.** In the original version of the statute, this Court was charged with the responsibility of making a proportionality review in every death penalty case. *See* 1978 Maryland Laws ch. 3, § 414(e)(4). The General Assembly repealed the proportionality review requirement in 1992. *See* 1992 Maryland Laws ch. 331.

verdict system, intended that the jury determination bind the court and require that the judge impose the jury-determined sentence. Thus, once a jury has determined that the appropriate sentence is death, the trial judge has no discretion with respect to the sentence to be imposed. It follows that Rule 4–345(b) is inapplicable to death sentences imposed pursuant to a jury-determined sentence, for it is clear that the revisory power does not confer on the trial judge an ability to impose a sentence it was not originally within his or her discretion to impose. Where the judge had no discretion in imposing sentence, there is no discretionary act for the judge to reconsider at a later time.

Courts in our sister jurisdictions which have considered the issue we today consider have reached the same conclusion we reach. New Mexico and Wyoming have binding jury verdict provisions in their death penalty statutes nearly identical in relevant respects to Art. 27, § 413(k). The New Mexico death penalty statute provides, in pertinent part, as follows:

> In a jury sentencing proceeding in which the jury ... unanimously specifies the sentence of death ... the court shall sentence the defendant to death.

N.M. STAT. ANN. § 31–20A–3; *see also State v. Guzman,* 102 N.M. 558, 698 P.2d 428, 429 (1985) (*"Guzman II"*). The Wyoming statute, likewise, provides that

> [u]nless the jury trying the case recommends the death sentence in its verdict, the judge shall not sentence the defendant to death.... Where a recommendation of death is made, the court shall sentence the defendant to death.

WYO. STAT. ANN. § 6–2–102(f); *see also Hopkinson v. State,* 704 P.2d 1323, 1326 (Wyo.1985) (*"Hopkinson V"*).

New Mexico and Wyoming have adopted rules of procedure governing review of sentences very similar to Maryland Rule 4–345. Rule 5–801 of the New Mexico Rules of Criminal Procedure reads, in pertinent part, as follows:

> A. Correction of Sentence. The court may correct an illegal sentence at any time pursuant to Rule 5–802 and may

correct a sentence imposed in an illegal manner within the time provided by this rule for the reduction of sentence.

B. Modification of Sentence. A motion to reduce a sentence may be filed within ninety (90) days after the sentence is imposed, or within ninety (90) days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within ninety (90) days after entry of any order or judgment of the appellate court denying review of, or having the effect of upholding, a judgment of conviction. A motion to reduce a sentence may also be filed upon revocation of probation as provided by law. Changing a sentence from a sentence of incarceration to a sentence of probation shall constitute a permissible reduction of sentence under this paragraph. The court shall determine the motion within ninety (90) days after the date it is filed or the motion is deemed to be denied.

Rule 35 of the Wyoming Rules of Criminal Procedure reads, in pertinent part:

(a) Correction. The court may correct an illegal sentence at any time. Additionally the court may correct, reduce, or modify a sentence within the time and in the manner provided herein for the reduction of sentence.

(b) Reduction. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within one year after the sentence is imposed or probation is revoked, or within one year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision. The court may determine the motion with or without a hearing.

In *Hopkinson v. State,* 632 P.2d 79, 153, (Wyo.1981) (*"Hopkinson I "*), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), the Wyoming high court held that the trial judge "has no ability to overrule the jury's determination, short of finding, as a matter of law, the evidence insufficient to support the jury's conclusion." The court reiterated this holding in *Hopkinson V,* stating:

[A] district judge has no jurisdiction to reduce a death sentence under Rule 36 [now Rule 35], W.R.Cr.P., adopted by this Court, because to do so would be in direct conflict with the legislative mandate, under the facts and background of the case now before us. We do not deny the district court's authority to set aside an illegal or illegally imposed death sentence within the terms of Rule 36 ... but that is not the case here.

704 P.2d at 1327. The court referred to the statutory scheme providing for automatic review in the Supreme Court, and the language of the statute that the Supreme Court review death sentences, and may affirm the sentence, set it aside and impose a sentence of life imprisonment or set the sentence aside and remand the case for resentencing by the trial judge. *See id.* The Wyoming court concluded that the legislature directed that review of death sentences determined by the jury were to be reviewed by the Supreme Court, and not the trial judge. The Wyoming statute providing for automatic review of death sentences by the Wyoming Supreme Court is similar to the Maryland statute providing for automatic review by this Court.[6]

---

6. WYO. STAT. ANN. § 6–2–103 provides in part:

(a) The judgment of conviction and sentence of death is subject to automatic review by the supreme court of Wyoming....

\*    \*    \*    \*    \*    \*

(c) The supreme court of Wyoming shall consider the punishment as well as any errors enumerated by way of appeal.

(d) With regard to the sentence, the court shall determine if:

(i) The sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;

The New Mexico court reached the same conclusion. In *State v. Guzman*, 100 N.M. 756, 676 P.2d 1321, 1328 (1984) (*"Guzman I "*), the court held that in a jury proceeding, the jury determines whether the sentence shall be death, and the trial judge must abide by this decision. The trial judge had no authority to impose a different sentence in a jury proceeding in which the jury returns a death verdict. *See id.* In *Guzman II*, the high court held that the trial judge is also without power to modify the sentence under New Mexico Rule 57.1 (now Rule 5–801). The court reasoned that the trial court does not have the authority under the rule to impose a modified sentence that it could not impose at the time of the original sentencing. The court stated that

> once the jury has unanimously agreed on a sentence of death ... the district court has no discretion to impose a sentence of life imprisonment.

*Guzman II*, 698 P.2d at 429. The essence of this reasoning is that "because the [trial] court could not impose a sentence contrary to that rendered by the jury at the time of original sentencing, the court could not later impose a modified sentence pursuant to Rule 57.1(b)." *State v. Cheadle*, 102 N.M. 743, 700 P.2d 646, 647 (1985).

The New Mexico court also stated that "[i]t is this Court which automatically reviews the jury judgment and sentence," when the death penalty has been imposed, not the trial judge. *Guzman II*, 698 P.2d at 429. Like Wyoming's statute, New Mexico's statute providing for automatic review of death sentences by the state's high court is similar to the Maryland statute providing for automatic review by this Court.[7]

---

(ii) The evidence supports the jury's or judge's finding of an aggravating circumstance as enumerated in W.S. 6–2–102 and mitigating circumstances.

7. N.M. Stat. Ann. § 31–20A–4 provides in part:

A. The judgment of conviction and sentence of death shall be automatically reviewed by the supreme court of the state of New Mexico.

B. In addition to other matters on appeal, the supreme court shall rule on the validity of the death sentence.

For all of the reasons above stated, we hold that when a judge imposes a death sentence in accordance with a jury determination, Rule 4–345(b) is inapplicable and the Circuit Court has no authority under that rule to modify the sentence.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.*

C.  The death penalty shall not be imposed if:
(1) the evidence does not support the finding of a statutory aggravating circumstance;
(2) the evidence supports a finding that the mitigating circumstances outweigh the aggravating circumstances;
(3) the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor.