886 A.2d 944

**William R. WOODFIELD, Jr., et al.**

v.

**WEST RIVER IMPROVEMENT ASSOCIATION, et al.**

**No. 2151, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

Nov. 30, 2005.

Eileen E. Powers (Charles F. Delavan, Blumenthal, Delavan & Williams, PA, on brief), Annapolis, for appellant.

William M. Ferris, Annapolis, for appellee.

Panel MURPHY, C.J., KRAUSER and JOHN C. ELDRIDGE (Retired Specially Assigned), JJ.

KRAUSER, J.

The Circuit Court for Anne Arundel County reversed the decision of the County Board of License Commissioners, granting a liquor license to appellants, William R. Woodfield, Jr. ("Woodfield") and Superior Woodfields, LLC. ("Superior Woodfields"), for a new crab and seafood restaurant in Gales-ville, Maryland. It did so at the urging of appellees, a group composed of the West River Improvement Association, Inc. ("West River"), the West River Sailing Club, Inc., and nineteen individuals, all but one of whom were Galesville residents.[1]

But the central figure in this dispute is neither an appellant nor an appellee, nor was he a party to or even a participant in any of the proceedings below. His name is Charles N. Bassford, and it was his connection to this liquor license and to other liquor licenses issued to two other County restaurants he reputedly owns, which led the circuit court to reverse the decision of the county liquor board and deny appellants a liquor license in the belief that to do otherwise would violate Art. 2B, Md. Ann.Code, § 9–301. That subsection prohibits

---

[1]. The individual appellants are: Mary Tod Winchester, Albert Winchester, William Preston Hartge, Jeanette C. Hartge, Fred T. Arnold, Cecelia Petro, Laura E. Dixon, Laura K. Cox, John Cox, Virginia S. Wood, Jeffrey Smith, Pat Hantske, Robert Brandt, Susan Urich, Peter M. Bell, Carole Bosley, Janet Labella, Kathy Smith, and Charity Reedy Hines.

the same person or entity from owning an interest in two or more liquor licenses in Anne Arundel County.

From the circuit court's decision, appellants noted this appeal, presenting two issues for review. As stated in appellants' brief, they are:

I.  Whether the lower court erred by substituting its judgment for that of the liquor board, holding that there was no substantial evidence to support the liquor board's finding that issuance of a license to Woodfields complied with the provisions of Article 2B, Md. Ann. Code § 10–202(a)(2).

II. Whether the lower court erred by failing to rule on the liquor board's decision within 90 days as required by Art. 2B, Md. Ann.Code, § 16–101(e)(3).

For the reasons that follow, we shall affirm the judgment of the circuit court.

## BACKGROUND

William R. Woodfield, Jr. applied to the County Board of License Commissioners (the "Board"), on behalf of Superior Woodfields, LLC,[2] for a Class B beer, wine, liquor, Sunday, and music liquor license.[3] The license was for a new crab and seafood restaurant to be located in Galesville, Maryland. The application indicated that the land upon which the restaurant was to be located was owned by 3809 Crain Limited Partnership ("3809 Crain"), whose president was Charles N. Bassford.

---

**2.** In Maryland, a liquor license "may not be issued to a ... limited liability company, but only to individuals authorized to act for a ... limited liability company who shall assume all responsibilities as individuals, and be subject to all of the penalties, conditions and restrictions imposed upon licenses under the ... provisions of this article." Md.Code (1957, 2001 Repl. Vol), Art. 2B § 9–101(a).

**3.** A Class B beer, wine, and liquor license "authorizes its holder to keep for sale and sell all alcoholic beverages at retail ... for consumption on the premises or elsewhere...." Md.Code (1957, 2001 Repl.Vol.), Art. 2B § 6–201(a).

On April 8, 2003, the Board held a public hearing on Woodfield's application. At that hearing, Woodfield and others testified on behalf of the application. The other witnesses were a registered landscape architect, a real estate appraiser, a certified land planner and land use consultant, Woodfield's first cousin, and "customer of all three (3) restaurants in Galesville. . . ." Given the narrowness of the issues before us, however, their testimony is largely irrelevant and does not bear recounting. Woodfield's, on the other hand, does.

Woodfield confirmed that the restaurant was to be located on land owned by 3809 Crain, that the land would be rented by Annapolis Produce & Restaurant Supply, Inc., ("Annapolis Produce") from 3809 Crain, and that Annapolis Produce would operate the restaurant. The liquor license, however, was to be managed by Superior Woodfields, pursuant to an agreement with Annapolis Produce. He further stated that, although he currently worked for Annapolis Produce as the assistant manager of the seafood section, when the restaurant opened, he would participate in the management of the restaurant, concentrating on the seafood part of the operation.

After appellants finished presenting their case for the license, appellees testified as to the problems that the proposed restaurant with a liquor license would cause. They expressed concern about such things as increased boating and automobile traffic, light and noise pollution, and intoxicated restaurant patrons, and they questioned the public need for another restaurant with a liquor license in Galesville. But their testimony, like the testimony presented by appellees, is irrelevant to the issue before us: the interest Mr. Bassford purportedly had in this and other county liquor licenses.

Jim Rogers was one of a number of witnesses presented by appellees who addressed this question. He not only questioned Woodfield's control over the liquor license at issue but claimed that the "real applicant here is Mr. Bassford." In support of that claim, he introduced the articles of organization for Superior Woodfields, noting that they were prepared and witnessed by Alan Hyatt, who had previously represented

3809 Crain, Mr. Bassford's company, in connection with the purchase of several pieces of property.

The introduction of the articles prompted the Board to make the following inquiry:

Board: Who is your lawyer, Mr. Woodfield?

Woodfield: My lawyer is sitting right beside me, Mr. Delavan.

Board: Did you ever have any huh, without going into the nature of the discussion, did you ever consult with Alan Hyatt concerning ...

Woodfield: I have never met Alan Hyatt at all.

Board: All ...

Woodfield: Unless I passed him in traffic, I have never met him.

Board: Did you ever pay him a retainer?

Woodfield: No sir.

Rogers further testified that, at a community meeting at which Bassford and Woodfield were present to discuss the proposed restaurant, "[w]e asked [Bassford] [what is your financial interest in the liquor license] Mr. Chairman and he did not want to answer." The Board then asked:

Board: [Woodfield,] [w]hat's Mr. Bassford's involvement if any in this license.

Woodfield: Mr. Bassford owns the property, the owner of the business is the Annapolis Produce, I work for Annapolis Produce. . . .

Board: Okay, so what's Mr. Bassford's financial interest in this license?

Woodfield: None.

Board: Mr. Woodfield is that your testimony under oath?

Woodfield: Yes. To the best of my knowledge none in that area. . . .

After noting that Woodfield works for Annapolis Produce, Rogers stated, "I believe Mr. Bassford owns Annapolis Pro-

duce." The Board then asked Woodfield's counsel if he knew who owned Annapolis Produce. He responded:

> I do not know who owns Annapolis Produce, I do believe that Mr. Bassford is a principal in that corporate entity, I have no idea what percentage small or large he may own. I think it is common knowledge although I have no personal knowledge, it is common knowledge that he is a principal in that corporate entity, if in fact it's a corporation, and I don't even know that.

When Rodgers attempted, however, to introduce a Dun & Bradstreet business report, confirming that Bassford was the president of Annapolis Produce, the Board rejected the report on relevancy grounds. And finally, Rogers testified that Bassford was the owner of two other County restaurants, Topside and Steamboat Landing, that had county liquor licenses.

Other witnesses presented by appellees agreed. Peter Bell, the vice-president of West River, testified that West River's board of directors voted to oppose the liquor application because, among other reasons, "Mr. Nick Bassford while not the applicant owns [Superior] Woodfields and also owns two (2) of the other liquor license restaurants, he owns Topside and he owns Steamboat Landing as well." Virginia Wood, a long term resident of Galesville, expressed similar sentiments. Bassford, she insisted, had bought the Steamboat Landing and the Topside Inn. A letter written by Jeanette Hartge, another member of the Galesville community, was also read, in which she stated that Mr. Bassford owned two of the three restaurants in Galesville. Finally, referring to the community meeting Bassford attended, Laura Cox, another Galesville resident, stated:

> [Bassford] spoke at that meeting in the first party person about this restaurant and how it would be run. He also spoke about the two (2) other restaurants, which have liquor licenses in Galesville as his. He talked about them failing and not doing well, he talked about restructuring the man-

agement teams there and changing the staff, he talked about the quality of service and the quality of food.

At the conclusion of the hearing, the Board granted Woodfield a class H liquor license.[4] In doing so, the Board stated:

The Board is required under Article 2B, 10–102 to consider a variety of factors in the totality of the circumstances in granting a license, among those factors is whether of [sic] not the license is necessary to accommodate the public. . . . [W]hether the applicant is a fit and proper person and we so find that the applicant is huh, paragraph huh, criteria three (3) whether there has been any false representations in the application and not with standing the allegation of a silent partner huh, there hasn't been any credible evidence that has been produce[d] in rising to the level that this applicant has made any false huh, huh, material statements or committed fraud in the application. The Board is also charged to consider whether the operation of the license huh, huh, if granted would unduly disturb the peace of the community huh, and as a catch all the other reasons that the Board feels in it's [sic] discretion should be huh, considered in huh, the issuance of the license. The principal concerns here are the accommodation of the public and what if any negative impact this establishment would have on the community. The community huh, as testified overwhelmingly as to their concerns and they are valid concerns. . . . However this is a W2 zoning classification that permits a restaurant no matter what this Board does huh, as well as other uses that huh, in my personal opinion would be far worse than any restaurant if huh, it was allowed to operate. Huh, for this reason I'm going to make following . . . motion regarding this license that I believe will address the issues raised by the community . . . so [I] find in motion that this license is necessary to accommodate the public, the public not being defined as the

---

4. "A Class H beer, wine, and liquor license authorizes the holder to keep for sale and sell beer, wine and liquor at retail at any restaurant for consumption on the premises." Md.Code (1957, 2001 Repl.Vol.), Art 2B § 6–201(c)(3)(i).

village of Galesville but the broader community of Anne Arundel County. Therefore, I'm going to make a motion that the license be granted as an H license, not as a B license. The difference being that this ... H license has no off sales, off sales are prohibited at this establishment....

## I.

Appellants contend that the circuit court erred in holding, in appellants' words, "that there was no substantial evidence to support the liquor board's finding that issuance of a license to Woodfields complied with the provisions of Art. 2B, Md. Ann.Code, § 10–202(a)(2)." But that is not what the circuit court held. On the contrary, it declared: "The Court finds that there was sufficient evidence from which a reasonable trier of fact could conclude that there is a public need and desire for the license."

It was not the Board's finding that appellants had complied with § 10–202(a)(2) that caused the circuit court to reverse the Board's decision, but the Board's finding that appellants were not in violation of § 9–301. That conclusion, according to the court, could not have been reasonably drawn from the evidence presented.

Section 9–301 provides:

[A] person, franchisor, franchisee, chain store operation, partnership, firm or corporation, except by way of renewal, may not have any interest in more than one license, whether held or controlled by direct or indirect ownership, by franchise operation, by chain store operation, by stock ownership, interlocking directors or interlocking stock ownership, or in any other manner directly or indirectly. It is the intention of this subsection to prohibit any such persons, franchisor, franchisee, chain store operation, firm, partnership, or corporation from having any interest, directly or indirectly, in more than one license.

Md.Code (1957, 2001 Repl.Vol.), Art. 2B § 9–301(3)(i).

In reversing the decision of the Board, the circuit court declared that, "by any reasonable interpretation of the evi-

dence presented, a trier of fact would conclude that Mr. Bassford has a direct interest in this applicant as well as two other liquor license holders in Anne Arundel County, which would violate § 9–301." The court further pointed out:

Mr. Bassford has an ownership interest in both the landlord and the tenant entities. The tenant (Annapolis Produce) will own and operate the restaurant. There was no evidence that there is a separation between the sale of food and liquor at the restaurant, or that Bassford would somehow only have an interest in the food sales but not the liquor sales. Similarly, there is no evidence that all the proceeds from the liquor sales would go only to Mr. Woodfield and/or Superior Woods. Without such evidence, logic dictates that the owner of a restaurant that sells liquor has a direct or indirect interest in the liquor sales. Mr. Woodfield testified he was mainly going to be in charge of the seafood operation, and did not state that he was the restauranteur. One of the expert witnesses testified that crabs and beer go together and that the sales of each affects the other. [transcript citation omitted]. There is no way a reasonable fact finder could have come to any conclusion other than Mr. Bassford has an interest in the sale of liquor, regardless of how the application was crafted.

█ We agree that the Board erroneously ignored mounting and uncontroverted testimony that Bassford had an interest in the license at issue and two other liquor licenses in Anne Arundel County. Woodfield's counsel, for example, confirmed that Bassford was a "principal" in Annapolis Produce, the corporate entity that was to run the restaurant and rent the property from 3809 Crain. But that description actually understates his role in that entity.

According to a Dun & Bradstreet report, which appellees were prevented from introducing into evidence by the board, Bassford was in fact the president of Annapolis Produce. As Annapolis Produce was renting from 3809 Crain, another entity of which Bassford was president, Bassford occupied the enviable position of being on both sides of the transaction.

Moreover, Woodfield worked for Annapolis Produce, and thus, for Bassford. Given, as the circuit court observed, that "there [was] no evidence that there [was] a separation between the sale of food and liquor at the restaurant" and that the "restaurant that sells the liquor has a direct or indirect interest in the liquor sales," the circuit court correctly concluded that "[t]here is no way that a reasonable fact finder could have come to any conclusion other than Mr. Bassford has an interest in the sale of liquor, regardless of how the application was crafted." That conclusion was further bolstered by testimony that Mr. Bassford remained conspicuously silent when asked at a town meeting what financial interest he had in the Woodfield liquor license.

Other witnesses offered uncontradicted testimony that Bassford owned two other county restaurants with liquor licenses: Topside and Steamboat Landing. Jim Rogers, a Galesville resident, testified to that fact, as did Peter Bell, the vice-president of West River, as well as Virginia Wood, a long term resident of Galesville. Adding to the cumulative weight of this testimony, Galesville resident, Laura Cox, testified that Bassford stated, at a community meeting, that he was going to "restructur[e] the management teams and chang[e] the staffs" of those two restaurants to make them more profitable.

Though the testimony presented by appellees on this point was largely hearsay and unsupported by any documentation, we also note that it went unanswered by appellants, the very parties who presumably had at their fingertips the information and documentation that would have swiftly resolved this issue. Their silence, on this point, was deafening and damning.

Even this Court was unable to breach the wall of silence surrounding this question. At oral argument, counsel for appellants was asked what interest Bassford had in these two restaurants, and she responded, to no one's surprise, that she did not know.

Before concluding our discussion of this issue, we note that both sides rely on *Kilroy v. Bd. of License Comm'rs*, 260 Md. 92, 271 A.2d 531 (1970) to bolster their respective positions.

The Kilroys and the Cloppers were holders of 7–Eleven Stores franchises at different locations in Prince George's County. *Id.* at 93, 271 A.2d 531. They received their franchises from the Southland Corporation. *Id.* at 95, 271 A.2d 531. When both franchisees applied separately for a liquor license, the Board of License Commissioners for Prince George's County denied their applications on the grounds that one of Southland's other franchisees already had a county liquor license and that to grant a license to another franchisee would violate Code, Art. 2B s 53(5). *Id.* at 94, 271 A.2d 531. That section prohibits any person or business, in Prince George's County, from having an interest in more than one liquor license.[5] *Id.* at 94–95, 271 A.2d 531.

The cases were then consolidated for appeal. *Id.* at 93, 271 A.2d 531. When the circuit court affirmed the decision of the board, the two franchisees noted an appeal. *Id.* Affirming that decision, the Court of Appeals first observed that, although "it has been held that a landlord [does not have an] interest in the liquor business conducted" on his premises, that holding applies to cases "where the landlord's only interest is in the collection of rent." *Id.* at 95–96, 271 A.2d 531 (citations omitted). But the Court cautioned that a situation in which "a franchisor has the right to control or regulate the manner in which a franchisee operates cannot be equated with the traditional relationship of landlord and tenant...." *Id.* at 96, 271 A.2d 531. Citing the "Store Agreement[s]" between Southland and the appellant franchisees, the Court concluded that Southland did have such a right of control over them.

After reviewing the "more unusual aspects of the 'Store Agreement,'" the Court returned to two aspects of that agreement which it viewed as dispositive, stating:

We need grasp only two of the threads of this intricate fabric to dispose of the issue. It cannot be doubted that the

---

5. The court noted that the Southland Corporation, the business that granted the Kilroys and the Cloppers their franchises, already had a franchisee in Prince George's county with a liquor license. *Kilroy,* 260 Md. at 95, 271 A.2d 531.

agreements contemplated that Southland would have had a security interest in the Kilroys' entire inventory, including their stock of liquor, and that receipts from the sale of any alcoholic beverages sold by the Kilroys would have come under Southland's control by 3 p.m. of the banking day next following the day of sale. To conclude under such circumstances that [the franchisor] would not have had the direct or indirect interest in the [franchisees'] license which the statute proscribes would fly in the face of an unequivocal statement of legislative intent.

*Id.* at 96–97, 271 A.2d 531.

We agree with appellees that Bassford's "arrangements gave him even greater control of the licensee and the sale of liquor at Woodfields Restaurant than the agreement between Southland and the Kilroys gave to Southland." As noted, Bassford, as owner of Annapolis Produce, was the employer of Woodfield, the licensee, and ran the restaurant. In his capacity as president of Annapolis Produce, he had, we assume, the power to determine the amount of alcohol the restaurant purchased, the type of alcohol it purchased, and the sale price of that alcohol. And Woodfield, as his employee, had little room to complain. Nor was any evidence presented, as the circuit court observed, that there would be a separation between the sale of food and liquor at the restaurant, or that Bassford would only have an interest in the food sales but not the liquor sales or that the proceeds from the liquor sales would go only to Superior Woodfields.

Moreover, five witnesses testified that Bassford owned two other liquor serving restaurants in Anne Arundel County: the Steamboat Landing and the Topside Inn. And there was even evidence that Bassford had publicly stated as much at a community meeting. As this evidence was unchallenged by appellees at the Board hearing, we conclude the only reasonable inference that could be drawn from this testimony was that Bassford had an interest in the liquor license sought by appellees as well as two other county liquor licenses.

## II.

Appellants claim that the circuit court failed to render a timely decision within 90 days "after the record ha[d] been filed in the court by the local licensing board," in accordance with Md.Code (1957, 2001 Repl.Vol.), Art. 2B § 16–101(e)(3). That subsection provides that, "[u]nless extended by the court for good cause, the local licensing board's decision . . . shall be affirmed, modified, or reversed by the court within 90 days after the record has been filed in the court by the local licensing board." Appellants point out that, on July 25, 2003, the Board filed the record with the circuit court, that the hearing was not held until October 27, 2003, and the order, reversing the Board was not issued until November 14, 2003. Thus, the court's decision was rendered more than 90 days after the record was filed.

The delay, moreover, was not "extended by the court for good cause," appellants assert. They point out that "there was no evidence, other than bald allegations in [appellees'] pleadings, that the court had scheduling conflicts that would have precluded hearing and deciding this appeal within the statutory time period." "It appears simply," they opine, "that due to a 'clerical error,' five separate requests to consider the time issue were never brought to a judge for consideration." The clerical error, they insist, did not amount to good cause because the error was a "deliberate and knowing inaction in the face of clear and repeated demands [for action]."

The last day of the 90 day period within which this case could be heard and a decision rendered was October 23, 2003. In September, appellees moved to extend the hearing date to October 27, 2003. To that motion, appellants filed an opposition.

Granting appellees' motion on October 20, 2003, three days before the 90 day period expired, the court continued the hearing date to October 27, 2003, for "good cause," stating that "because of the various scheduling conflicts before [it], that it was impracticable for [it] to set a hearing in this matter on October 23, 2003." And for "further cause" it added that

"the motion and opposition were not brought to a Judge in time for consideration, due to a clerical error."

■ Section 16–101(e)(3) permits the circuit court, in the exercise of its discretion, to extend the 90 day period for good cause, and that is what the circuit court did. Both scheduling conflicts, *see State v. Frazier,* 298 Md. 422, 457, 470 A.2d 1269 (1984), and clerical errors, *see McIntyre v. State,* 17 Md.App. 526, 529, 302 A.2d 672 (1973), have long been recognized as grounds, in other contexts, for justifying the extension of a hearing or a trial date. We have no reason to rule otherwise here. Moreover, contrary to appellants' claim, there is no evidence that the failure to bring this matter to the attention of the court was "knowing and deliberate." We therefore find no abuse of discretion here.

Before concluding this opinion, we feel compelled to address the dissent's assertion that the 90 day determination provision in Article 2B § 16–101 is "a mandatory time limit for a circuit court to decide a liquor board judicial review action," an issue, which was not briefed by appellants (nor, for that matter, was the dissent's claim that the court erred in not extending the time for decision by written order raised by appellants).

The dissent's contention that that provision is mandatory is simply incorrect. The language and statutory history of § 16–101 leave little room for doubt that the 90 day determination provision is directory, not mandatory.

The history of this statute was limned by the Court of Appeals in *Scherr v. Braun,* 211 Md. 553, 128 A.2d 388 (1957). According to the Court, prior to the enactment of the statute in 1943, trial court review of local licensing board decisions was limited to "only one or two jurisdictions." *Id.* at 562, 128 A.2d 388. Most appeals from local licensing boards were heard by the State License Bureau. *Id.* "The then governing statute, Code 1939, Art. 2B, § 63, made it the duty of the Bureau to hear and determine all such appeals 'within thirty days from the date of the receipt of the papers' from the local board." *Id.* When, however, "the Attorney General, in 27 Op.Attys.Gen. 59, construed this statute to mean that the

Bureau had a duty to act but that '[t]here is no provision in Section 63 which compels or necessarily tends to the conclusion that failure to act within the 30–day period nullifies a decision when made[,]' " the "Legislature undertook to authorize appeals from the license boards to the courts and, in doing so, put in the new statute the very provision that the Attorney General's opinion said would have made the earlier statute mandatory." *Id.* "In other words," the Court continued, "the Legislature attached a consequence to the failure to act within the thirty-day period." *Id.* And that "consequence was that the license board was affirmed automatically by mandate of the statute if the court did not act in due time." *Id.* Thus 1943 Md. Laws, Chap. 714 was born, which is the predecessor of § 16–101. That statute states, in part:

> The failure of the court to determine an appeal within a period of 30 days after the record has been filed in court by the local board as above provided, ***shall constitute an automatic affirmance*** of the local board's decision, unless the time has been extended by the court for good cause shown.

This provision remained unchanged until 1991. Then it was amended to increase the period of time the circuit court had to "determine an appeal" and to remove the language stating that the failure by the circuit court to render a decision within thirty days would "constitute an automatic affirmance of the local board's decision." Amended, it stated:

> Unless extended by the court for good cause, the local licensing board's decision made under subsection (a) of this section shall be affirmed, modified or reversed by the court within 90 days after the record has been filed in the court by the local licensing board.

1991 Md. Laws, Chap. 560.

With the removal of the "automatic affirmance" language the 90 day provision became "directory." What the addition of the automatic affirmance language created, its deletion extinguished.

Nor does the retention of the word "shall" in the determination provision affect our conclusion that it is directory, not mandatory. Our appellate courts have repeatedly declared that "shall" does not necessarily render a statutorily-specified action mandatory. That is especially true when, as here, the statute has no sanction for the court's failure to comply with the relevant time provision. As the Court of Appeals has observed, "[s]tatutory provisions fixing the time for performance of acts are held to be directory where there are no negative words restraining the doing of the act after the time specified and no penalty is imposed for delay." *Scherr,* 211 Md. at 561, 128 A.2d 388. Indeed, almost a hundred years ago, that point was made by the Court of Appeals, in *McCalls Ferry Power Co. v. Price,* 108 Md. 96, 99, 69 A. 832 (1908), in which it held that Md. Const. art. 4, § 15, which states that the Court of Appeals "shall" file a written decision within three months of argument, was merely directory.

■ And, finally, we note that all of the cases relied upon by the dissent for the proposition that the 90 day determination provision is mandatory—*Scherr,* 211 Md. at 553, 128 A.2d 388; *Pearce v. Board of Liquor License Commissioners,* 228 Md. 515, 180 A.2d 651 (1962); *Brown v. Baer,* 291 Md 377, 435 A.2d 96 (1981); and *Jabine v. Priola,* 45 Md.App. 218, 412 A.2d 1277 (1980)—were decided before 1991 and thus predate the elimination of the "automatic affirmance" language from § 16–101. We therefore hold, given the statutory history of § 16–101 and the absence of any sanction for failing to meet its decisional deadline, the 90 day determination requirement is directory, not mandatory.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**

ELDRIDGE, J., dissenting.

I dissent, on two alternative grounds, from the majority's decision in this action for judicial review of an adjudicatory

administrative decision by a board of liquor license commissioners.

*First,* by upholding the Circuit Court's judgment reversing the administrative decision, the majority holds that the Circuit Court was authorized to exercise jurisdiction in the matter, even though the statutorily mandated period for exercising jurisdiction had expired prior to the time when the Circuit Court decided the case. This holding by the majority is directly contrary to the plain language of the controlling statute and is flatly inconsistent with decisions by the Court of Appeals of Maryland. The General Assembly has required that cases like the present one "shall be" decided "by the court within 90 days after the record has been filed in the court by the local licensing board." The majority, however, apparently disagreeing with the legislative policy embodied in the statute, calls the enactment "directory" and "not mandatory." By this simple labeling device, the majority treats the statute as if it did not exist. Such circumvention of legislative policy cannot be squared with decisions by the Court of Appeals or with Article 8 of the Maryland Declaration of Rights.[6]

*Second,* even if the Circuit Court were authorized to entertain the case on its merits, both the Circuit Court and the majority panel of this Court have eviscerated the substantial evidence rule. Both courts have found "that 'by any reasonable interpretation of the evidence presented, a trier of fact would conclude that Mr. Bassford has a direct interest in this applicant as well as two other liquor license holders in Anne Arundel County, which would violate § 9–301.'" (Slip opinion at 9). In making this finding of fact, the Circuit Court and the majority of this Court's panel totally ignore the direct testimony before the Anne Arundel County Board of License Com-

---

**6.** Article 8 of the Maryland Declaration of Rights states as follows:
"**Article 8.  Separation of powers.**
"That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

missioners (hereafter referred to as the "Liquor Board" or "Board"), under oath, that Mr. Bassford has *no* "financial interest in this license." The majority also ignores a critical part of the testimony by the chief witness for the opponents, Jim Rogers, whereas other parts of his testimony are invoked by the majority (opinion at 705–06, 886 A.2d at 947–48), that, except for the ownership of the land, Rogers had no "evidence" that Bassford had "any other financial interest in this license" and that Rogers "can't demonstrate that" Bassford has any other financial interest in the license. Instead, the court below and the majority rely upon hearsay that, for the most part, indicated that Bassford at the time owned two *other* restaurants in Galesville with liquor licenses. They also rely upon evidence *not in the record* and upon "the wall of silence surrounding this [ownership] question." (Opinion at 710–11, 886 A.2d at 950–51). In so doing, the majority overlooks the recent admonition by Judge Charles E. Moylan for this Court with regard to judicial review of an adjudicatory administrative decision (*Tochterman v. Baltimore County,* 163 Md.App. 385, 387–388, 880 A.2d 1118, 1119 (2005)):

> "If there is one overarching principle of administrative law, it is that the courts should never lose sight of the separation of powers doctrine when, periodically, they are asked to intervene in the operations of a separate and equal branch of government. * * * [W]e must be poignantly sensitive 1) to the need to resist the temptation to behave as an imperial judiciary and 2) to the institutional deference we owe to the executive branch of government. An administrative appeal is not simply a routine appeal from lower down the ladder of our own judicial branch."

I.

A.

Maryland Code (1957, 2005 Repl.Vol.), Art. 2B, § 16–101, provides in pertinent part as follows (emphasis added):

> "(a) *Generally.*—The decision of a local licensing board, in approving, suspending, revoking and restricting, or refus-

ing to approve, suspend, revoke or restrict a license, or a licensee, shall be subject to [judicial review] in the manner provided in this section."

\*     \*     \*

"(e) *Scope of [judicial review].*—(1)(i) Upon the hearing of such [judicial review action], the action of the local licensing board shall be presumed by the court to be proper and to best serve the public interest. *The burden of proof shall be upon the petitioner* to show that the decision complained of was against the public interest and that the local licensing board's discretion in rendering its decision was not honestly and fairly exercised, or that such decision was arbitrary, or procured by fraud, or unsupported by any substantial evidence, or was unreasonable, or that such decision was beyond the powers of the local licensing board, and was illegal."

\*     \*     \*

"(3) Unless extended by the court for good cause, the local licensing board's decision made under subsection (a) of this section *shall be affirmed, modified, or reversed by the court within 90 days after the record has been filed* in the court by the local licensing board."

Consequently, the Circuit Court must render a decision on the merits, in an action for judicial review of a liquor board's decision, within 90 days after the record was filed in the Circuit Court. This was not done in the present case.

In the case at bar, the record was filed in the Circuit Court on July 25, 2003. The ninety-day period, therefore, expired on October 23, 2003. The record shows that there was a written order dated October 20, 2003, purporting to extend the time to *hear* the case to October 27, 2003, and the case was *heard* on October 27th. This order did not, however, extend the time to *decide* the case. Moreover, the order purporting to extend the hearing date was not filed and entered on the docket until November 14, 2003. No other order extending the time, either before or after this date, appears in the record. There never was an order extending the date beyond October 23,

2003, for the Circuit Court's *decision* in the case. The Opinion and Order of the Circuit Court reversing the decision of the Board was filed on November 14, 2003, long after the Circuit Court's authority to exercise jurisdiction had expired.

Even if an order extending the time for a Circuit Court *hearing* could properly be construed as an order extending the time for the Circuit Court's *decision,* the order in the present case was not filed on or before October 23, 2003, the last date on which the Circuit Court for Anne Arundel County was authorized to exercise jurisdiction. Furthermore, the extension was until October 27, 2003, not November 14, 2003, when the court's decision was rendered. Under the plain language of the statute, and the appellate decisions applying the statute, the Circuit Court on November 14, 2003, clearly lacked jurisdiction to reverse the Board's decision.

### B.

The statutory provision, imposing a time limit upon a trial court's authority to review a liquor board decision, was first interpreted and applied by the Court of Appeals in *Scherr v. Braun,* 211 Md. 553, 128 A.2d 388 (1957). At that time, the statute provided that the reviewing court's decision must be rendered within thirty days from the time the record was filed in court. In *Scherr,* the Board of Liquor License Commissioners for Baltimore City granted a package goods license to the owners of a food market. As in the instant case, the opponents filed in the Baltimore City Court (now the Circuit Court for Baltimore City) an action for judicial review of the administrative decision. The administrative record was filed in the reviewing court on January 27, 1956, but the case was not decided within thirty days from that date. On April 20, 1956, the trial court, somewhat like the trial court in the case at bar, filed an order purporting to extend the time for hearing the case and to extend the time for decision for a period fifteen days after the hearing.[7] The Baltimore City Court, like the

---

7. In this respect, the order in *Scherr* went beyond the order in the present case. In the present case, the extension "order" purported to extend only the hearing date.

majority today, held that the statutory time limit for deciding the case was "directory" and not mandatory. In this respect, the Baltimore City Court went into conflict with the Circuit Court for Howard County which had earlier, in an opinion by Judge James Macgill, dismissed a liquor board judicial review action "on the ground that under the statute he had no jurisdiction or power to do anything else since thirty days from the filing of the record had elapsed without decision or previous extension of time."[8] *Scherr v. Braun, supra,* 211 Md. at 561, 128 A.2d at 391.

The applicants for the license in *Scherr* appealed to the Court of Appeals. In an opinion by Judge Hammond (later Chief Judge of the Court of Appeals), the Court reversed, agreeing with Judge Macgill's analysis of the statute and disagreeing with the decision by the Baltimore City Court. The Court of Appeals, in holding that the statute was "mandatory," explained (*Scherr,* 211 Md. at 564–565, 128 A.2d at 393, emphasis added):

> "For good cause shown, any judge of the court to which the appeal [*i.e.,* the judicial review action,] has been taken may extend the time for the determination of the case. In this way, the court has full control of the matter. It can meet any practicality that may arise. True, the obligation is cast upon the parties to make sure that the court in due time either decides the case or passes the proper order of extension. *Such an order must be passed within a prescribed period or be ineffective.* This is not an unusual requirement."

Judge Hammond for the Court of Appeals concluded in *Scherr* (211 Md. at 566, 128 A.2d at 394):

> "We think the restriction on the court's right to act after thirty days is not modal but is so interwoven with the

---

8.  At the time, in actions for judicial review of liquor board decisions, a conflict among the trial courts on a legal issue was a prerequisite for an appeal to the Court of Appeals. The conflict requirement was subsequently repealed by the General Assembly. *See* Ch. 510 of the Acts of 1992.

special authority granted the court as to be a part of it, a limitation on its powers. We read the statute as if it said in terms to the Courts: 'You have thirty days to decide the appeal—or as much longer as you have, within the thirty days, extended the time. If you fail to act within the stated time, the authority given in the first instance to decide or act in the case is automatically withdrawn and you have no further power whatever in the matter.' So reading the statute we find the decision of the appeal was beyond the power of the Baltimore City Court and its order is reversed."

No subsequent opinions by the Court of Appeals, and no subsequent enactments by the General Assembly, have changed the holding in *Scherr v. Braun* that the time limit for a trial court's decision, in a liquor board judicial review action, currently set forth in Art. 2B, § 16–101(e)(3), is mandatory and not "directory."

The holding in *Scherr v. Braun* was reaffirmed by the Court of Appeals in *Pearce v. Board of Liquor License Commissioners*, 228 Md. 515, 180 A.2d 651 (1962). In *Pearce*, the Baltimore County Liquor Board granted a liquor license to a particular applicant, and the opponents of the license filed an action for judicial review in the Circuit Court for Baltimore County. The case was not decided by the Circuit Court within thirty days after the administrative record was filed, and the Circuit Court dismissed the judicial review action. In affirming the dismissal of the action, the Court of Appeals, in an opinion by Judge Sybert, held (228 Md. at 521, 180 A.2d at 654): "It is settled law that this provision of the statute deprived the [Circuit] Court of all power to act after thirty days."

More recently, in *Brown v. Baer*, 291 Md. 377, 435 A.2d 96 (1981), the Court of Appeals again reaffirmed the holdings in the *Scherr* and *Pearce* cases, stating (291 Md. at 385, 435 A.2d at 100, emphasis in original):

"Consequently, the critical issue in this case is whether the circuit court rendered a final decision within the statutorily prescribed time period."

"Turning to this issue, we agree with the Court of Special Appeals that under Art. 2B, § 175(e)(3), and *Scherr v. Braun, supra,* anything other than a *written* extension order or a docket entry prior to the expiration of the thirty-day period is ineffective to extend the time limit for determining the case. Consequently, in the present case, October 8, 1979, was the deadline for a final decision of the circuit court. On the other hand, we cannot agree that the October 8, 1979, remand order failed to finally decide the case."

In *Jabine v. Priola,* 45 Md.App. 218, 412 A.2d 1277 (1980), this Court reached the same conclusion. In *Jabine,* the Mayor and Alderman of the City of Annapolis, sitting in their capacity as the Board of Liquor Licence Commissioners for the City of Annapolis, denied a liquor license to Priola. Priola then sought judicial review of the decision. The Circuit Court for Anne Arundel County reversed and ordered that the license be granted, subject to certain conditions. The City of Annapolis noted an appeal to this Court, contending, *inter alia,* that the Circuit Court had lost the authority to exercise jurisdiction over the liquor license action because it did not decide the case or pass an order for extension within the statutorily mandated period. *Jabine v. Priola, supra,* 45 Md.App. at 221, 412 A.2d at 1279. This Court agreed, and remanded the case to the Circuit Court with orders to dismiss the action for judicial review of the Liquor Board's decision, relying on *Scherr v. Braun, supra,* 211 Md. 553, 128 A.2d 388, and *Pearce v. Board of Liquor License Commissioners, supra,* 228 Md. 515, 180 A.2d 651. In doing so, the Court stated (*Jabine v. Priola, supra,* 45 Md.App. at 230, 412 A.2d at 1284):

"In the instant case, no specific order of extension was sought or granted within thirty days of July 10, 1978, the date on which the record was filed with the circuit court. Therefore, by virtue of § 175(e)(3) [now § 16–101(e)(3) ], the decision of the Board of Liquor License Commissioners for the City of Annapolis denying the Priolas' application was

automatically affirmed, and the court should have granted the City's timely motion to dismiss that aspect of the consolidated [judicial review action]."

Although the wording of the statute now codified as Art. 2B, § 16–101(e)(3), has undergone minor changes over the years, nonetheless the statute has consistently mandated that an action for judicial review of a liquor board's decision be decided within a specified time period unless, prior to the expiration of that time period, the deadline for decision has been extended by a written order of the trial court. The above-discussed cases are controlling and make it clear that the Circuit Court for Anne Arundel County had lost its authority to exercise jurisdiction over the merits of the instant judicial review action.

## C.

Recent legislative history, and particularly a 1991 amendment to the statute, confirms that the General Assembly continues to view the time limit specified by Art. 2B, § 16–101(e)(3), as a mandatory requirement. In 1991 there was an effort to repeal the mandatory time limit, but the effort was unsuccessful.

The majority relies on the 1991 amendment for its holding that § 16–101(e)(3) is "directory" and that, therefore, the statute may be ignored by litigants and by the courts. Nothing in the language or legislative history of the 1991 amendment supports the majority's view. To the contrary, the General Assembly in 1991 explicitly *refused* to repeal the *mandatory* time limit of § 16–101(a)(3).

As a background matter, prior to 1991 the wording of the time limit provision (then codified as Art. 2B, § 175(e)(3)), was that, unless the trial court previously extended the time, a liquor board's decision "is automatically affirmed if the court fails to determine" the case within thirty days. This language was in effect when the Court of Appeals in *Scherr v. Braun, supra, Pearce v. Board of Liquor License Commissioners, supra,* and *Brown v. Baer, supra,* and this Court in *Jabine v. Priola, supra,* held that the trial court could not exercise

jurisdiction after the deadline. Despite the "automatically affirmed" language in the statute, the *Pearce* case upheld a *dismissal* of the action and the *Jabine* case directed the trial court to *dismiss* the action. Also, the *Scherr* opinion approved the judgment of the Circuit Court for Howard County which had *dismissed* the action. When a court is unable to exercise subject-matter jurisdiction in a case, either a dismissal, or a transfer of the case to another court, if another court would have jurisdiction, constitutes the appropriate exercise of judicial authority. *See Bienkowski v. Brooks,* 386 Md. 516, 550, 873 A.2d 1122, 1142 (2005). The *Scherr, Pearce,* and *Jabine* opinions reflected this principle. Technically, an "affirmance" is not an appropriate judgment because it represents an exercise of jurisdiction over the merits of the case.[9]

In the 1991 legislative session, House Bill 427 was introduced in the General Assembly. The Bill, as originally introduced, would have repealed the entire provision for a mandatory time limit to decide a liquor board judicial review action. The House of Delegates Economic Matters Committee approved House Bill 427 in its original form, pointing out that under the bill a "circuit court will determine the outcome of a" judicial review action regardless of the expiration of thirty days, as "there is no 'drop-dead' time limit." *See* House Economic Matters Committee Floor Report on HB 427 at 1 (1991). Thus, if the bill had been enacted in this form, the substance of the majority's view today would have been correct. House Bill 427 did pass the House of Delegates in this form, but the Senate refused to concur with the repeal of the mandatory time limit for a circuit court to decide a liquor board judicial review action. The Senate amended the bill, "requiring a local board's decision to be affirmed, modified, or reversed within a certain period of time," but the House of Delegates refused to concur in the amendment and appointed

---

9. In fact, a legislative requirement that the judiciary "affirm" the decision of an Executive Branch agency, without determining anything about the case, might present constitutional issues under the principles set forth in *Duffy v. Conaway,* 295 Md. 242, 259–263, 455 A.2d 955, 963–965 (1983).

Conference Committee members. *See* Journal of Proceedings, House of Delegates, April 2, 1991, at 2411. The Conference Committee's Report, accepted by both the House and the Senate, and embodied in the enacted bill, mandated that a liquor board's decision "shall be affirmed, modified, or reversed by the court" within ninety days after the record has been filed in the court. *See* Journal of Proceedings of the House of Delegates, April 4, 1991, at 2584–2585.

Consequently, the only substantive change in the statute prescribing a mandatory time limit for a circuit court to decide a liquor board judicial review action has been to extend the time from thirty days to ninety days. While the "automatic affirmance" language was deleted, this provision had not, as a technical matter, been followed by the courts. Instead, the statutory deletion of the "automatic affirmance" language was consistent with the normal and proper judicial procedure of dismissing an action when a court is no longer authorized to exercise subject-matter jurisdiction over the action. The deletion of the "automatic affirmance" language does not remotely support the majority's theory that the statute is now "directory." This is particularly true in light of the legislative history of the 1991 amendment and the Senate's clear refusal to change the mandatory nature of the statute.

### D.

The majority's invocation of the discredited "directory" theory represents a unique leap backwards.

There was a period in the past when the Court of Appeals, faced with certain types of statutory provisions the enforcement of which was deemed unfair or inequitable, would label the statutes "directory" and would not enforce them. Under this theory, the statute was viewed as merely expressing a legislative desire, without any requirement that violations be enforced by a particular result or any type of sanction. The theory was largely a fiction, as any legislative body, enacting a statute, intends that there be compliance with the statute. When a legislative body simply wishes to express a sentiment, it passes a resolution. The "directory" theory, under which

courts would effectively nullify constitutional statutes, could not be justified under the spirit of Article 8 of the Maryland Declaration of Rights.

Recognizing the dubious nature of the "directory" theory, the Maryland Court of Appeals abandoned it more than twenty-five years ago. To the best of my knowledge, no Court of Appeals' case for more than twenty-five years has held that a valid statute is merely "directory" and need not be complied with. The seminal case is *State v. Hicks,* 285 Md. 310, 334–336, 403 A.2d 356, 369–370 (1979), where the Court of Appeals overruled a prior case holding that a particular statute setting forth time limits, but not containing explicit sanctions, was directory. The Court in *Hicks* held that all of the time limits in the statute were mandatory. Nevertheless, the Court further held that violations of different time limits in the statute would call for different sanctions because of the legislative policies underlying the time limits.

The approach begun in *Hicks* has been continuously followed ever since. In *Lamb v. Hammond,* 308 Md. 286, 309, 518 A.2d 1057, 1068 (1987), the appellees argued that a provision in the State's Election Code was "merely 'directory'" because the statute allegedly failed to specify a sanction applicable under the particular circumstances of the case. The Court of Appeals unanimously rejected the argument, stating in an opinion by Judge Wilner (specially assigned) (308 Md. at 309, 518 A.2d at 1068):

"We do not agree. For one thing, this Court in recent times has departed from the notion that clear commands or conditions imposed by a legislative body may be disregarded on the theory that they are merely 'directory.' *See, for example, Office & Prof. Employees Int'l v. MTA,* 295 Md. 88, 96, 453 A.2d 1191 (1982), where we observed that 'where a statute authorizes or permits a person or agency to take a certain type of action in a particular manner, such manner becomes a mandatory limitation, and the action must be taken in conformity with it.'"

Just a few months ago, in *Downes v. Downes,* 388 Md. 561, 570–571, 880 A.2d 343, 348–349 (2005), the Court of Appeals

flatly rejected a party's argument that the time limits in a statute are "merely directory, not mandatory." The Court of Appeals replied (388 Md. at 573, 880 A.2d at 350):

"We think, and hold, that the circuit courts *are* bound by those limitations. The limitations are statutory ones that govern the exercise of a right that is conferred only by the statute. The Legislature has decreed that the right must be exercised within a specific time after or before identified and ascertainable events. . . . The circuit court is, and must of necessity be, as bound by those limitations as the orphans' court."

*See also, e.g., State v. Green,* 367 Md. 61, 82, 785 A.2d 1275, 1287 (2001) ("When the Legislature commands that something be done, using words such as 'shall' or 'must' . . ., the obligation to comply with the statute or rule is mandatory"); *In re Anthony R.,* 362 Md. 51, 59, 763 A.2d 136, 141 (2000) (The Court "pa[ys] close attention to the word 'shall' and its generally mandatory nature"); *Burch v. State,* 358 Md. 278, 284, 747 A.2d 1209, 1212 (2000) (" 'Shall' ordinarily indicates a mandatory intent"); *Prince George's County v. Vieira,* 340 Md. 651, 660, 667 A.2d 898, 902 (1995) ("It is significant that the Legislature chose to use the word, 'shall.' . . . [T]hat word is regarded as being a. direct indication that the Legislature directed that certain conduct is *required* "); *In re Keith,* 310 Md. 99, 103–104, 527 A.2d 35, 37 (1987) (pointing out that the key issue with regard to time limits in statutes or rules, where no express sanction is set forth, is not whether or not the statute or rule is mandatory; such statutes are mandatory, but the issue concerns the appropriate sanction); *State v. Werkheiser,* 299 Md. 529, 532–533, 474 A.2d 898, 900 (1984) ("We agree with the trial court that the use of the word 'shall' in this statute imposes a mandatory duty"); *State v. Frazier,* 298 Md. 422, 427–430, 470 A.2d 1269, 1272–1273 (1984).

Art. 2B, § 16–101(e)(3), unequivocally states that a circuit court action reviewing a liquor board decision "shall be" decided within 90 days. The majority's refusal to apply the statute cannot be reconciled with the above-cited cases.

E.

The majority opinion at one point seems to indicate that the Circuit Court in this case complied with Art. 2B, § 16–101(e)(3), because the court "[g]rant[ed] appellees' motion on October 20, 2003, three days before the 90 day period expired, [and] the court continued the hearing date to October 27, 2003, for 'good cause'. . . ." (Opinion at 713–14, 886 A.2d at 952). Nevertheless, as previously discussed, this "order" extended only the hearing date and not the date of decision; the extension was to October 27th and not to November 14th when the case was decided; the "order" was not filed before the time limit expired but was filed on November 14, 2003; and there never was an order, filed on or before the October 23, 2003, deadline, extending the time for decision. Whether or not "good cause" for such an extension may have existed is immaterial, because there was no extension in accordance with the statute and the case law.

The Circuit Court for Anne Arundel County lost its authority to exercise jurisdiction over this case at the close of business on October 23, 2003, and the case should have been dismissed. The majority's decision upholding the Circuit Court's exercise of jurisdiction cannot be reconciled with the statutory language, the Court of Appeals' opinions in *Scherr*, *Pearce*, and *Brown v. Baer*, and this Court's opinion in *Jabine v. Priola*.

F.

One final matter concerning Art. 2B, § 16–101(e)(3), warrants discussion. The majority seems to suggest that the appellants failed properly to raise the issue of the 90–day mandatory time limit for the Circuit Court to decide the case (opinion at 713–14, 886 A.2d at 952–53), although the majority does not base its decision on this ground. Nevertheless, the matter was clearly raised in the Circuit Court and in this Court.

After the administrative record was filed in the Circuit Court, the appellants advised the court, by letter, of the 90–

day requirement under Art. 2B, § 16–101(e)(3), and stated to the court that the case must be decided by October 23, 2003. In response to this letter, the appellees on September 5, 2003, filed a motion for an extension, which motion quoted Art. 2B, § 16–101(e)(3). The appellants on September 16, 2003, filed in the Circuit Court an opposition to the motion for an extension, stating in paragraph 5 that "State law governing [judicial review of] decisions of local licensing boards requires that this [case] be decided within 90 days of filing the record which is *October 23, 2003,*" and stating in paragraph 8 that "Petitioners have not shown good cause to support their request for the court to decide this case outside the ninety-day period prescribed by State law." The appellants' opposition relied on some of the cases, discussed earlier in Part 1 B of this dissenting opinion, holding that the statute was mandatory and constituted a limitation on the Circuit Court's jurisdiction. By using the word "requires," and relying upon the appellate cases under the statute, the appellants were clearly taking the position that Art. 2B, § 16–101(e)(3), was mandatory.

On October 6, 2003, the appellees filed a reply to the appellants' opposition, in which they discussed the Court of Appeals' cases holding that the statute was mandatory and that it constituted a " 'limitation on' " a circuit court's " 'powers.' " The appellees went on to state:

"It should be clear from a reading of the decisions cited by the Respondents [appellants] that this Honorable Court has the clear authority to extend the time for any hearing in this matter, as well as extend the time for deciding this matter *provided* that it does so within, in this case, the 90 day period of Art. 2B, § 16–101(e)(3)" (Emphasis in original).

The appellees' reply continued by requesting

"[t]hat this Honorable Court extend the time for rendering a decision in this matter to at least *November 27, 2003,* one month after the date of the presently scheduled October 27, 2003 hearing, in order to give the court sufficient time to hear, as well as decide, this matter."

"It is also imperative that this Honorable Court rule on this motion prior to October 23, 2003, the date on which the 90 day period within which the Court has the power to either decide or extend the time for deciding this case expires." (Emphasis in original).

The appellees filed with their reply a proposed order extending the hearing date to October 27, 2003, and extending the time for deciding the case to November 27, 2003. This proposed order, however, was never signed by a judge.

Consequently, it is obvious that both sides in the Circuit Court took the position that Art. 2B, § 16–101(e)(3), was mandatory, that an order extending the 90–day period was required to be signed and filed by October 23, 2003, and that, if the court failed to order an extension by October 23, 203, it would lose jurisdiction over the case. Despite the entreaties by the parties, however, the trial court took no action by October 23, 2003, to extend the time for decision. At the hearing on October 27, 2003, with regard to the appellees' proposed order extending the time for decision until November 27, 2003, the trial judge stated that "I didn't see that order." The trial judge also raised the question whether "I am already without jurisdiction . . . ." Although counsel at the October 27, 2003, hearing did not argue that the court had lost jurisdiction, the fact of the matter is that the trial court on October 27th had lost its authority to exercise jurisdiction over the case.

Part II of the appellants' brief in this Court (at 33–35) was devoted to the argument that the trial court "erred" by failing to decide the case within ninety days as required by Art. 2B, § 16–101(e)(3). Although the appellants may not have used the exact same wording as employed in the majority opinion or in this dissent, that is not a requirement for preservation. It is clear that the issue under Art. 2B, § 16–101(e)(3), has been consistently preserved throughout this case.[10]

---

10. The only issue regarding Art. 2B, § 16–101(e)(3), which was never raised by a party, is the majority's theory that the statute is merely

Finally, even if the appellants had not properly preserved the Art. 2B, § 101(e)(3), issue for appeal, the issue is a jurisdictional one as shown by the cases discussed in Part I B of this dissenting opinion. The requirement that the judicial review action be decided within the statutory time limit is "a limitation on [the circuit court's] powers;" the consequence, if the court " 'fail[s] to act within the slated time,' " is that " 'the authority given in the first instance to decide or act in the case is automatically withdrawn and [the trial court has] no further power whatever in the matter.' " *Scherr v. Braun, supra,* 211 Md. at 566, 128 A.2d at 394. Under Maryland Rule 8–131(a), it is the type of jurisdictional issue which an appellate court will decide regardless of preservation. *See, e.g., Duffy v. Conaway,* 295 Md. 242, 254–255 n. 8, 455 A.2d 955, 961 n. 8 (1983) ("[T]he jurisdictional issue was raised by us sua sponte. Of course, jurisdiction is a matter which, if noticed, will be addressed by a court even though it was not raised by any of the parties"), and cases there cited.

## II.

Alternatively, even if the Circuit Court had been authorized to exercise jurisdiction over this case, the administrative decision was supported by substantial evidence and should have been affirmed. The majority's opinion represents an extreme aberration in the field of Maryland administrative law.

The majority holds that Charles N. Bassford, who concededly had interests in other Anne Arundel County liquor licensees, has "an interest in the liquor license" granted by the Liquor Board to the appellants and that the administrative finding of fact to the contrary is unsupported by substantial evidence. (Opinion at 709, 886 A.2d at 949–50). The majority states that the "testimony that Bassford had an interest in the license at issue" was "uncontroverted." (*Ibid.*) It almost

---

"directory" and may be ignored. Neither side, in the Circuit Court or in this Court, argued that the statute is only "directory." This is entirely a late invention by the majority.

seems like the majority is reviewing a different administrative record than the one submitted to me.

The principal issues at the Liquor Board hearing concerned matters other than Mr. Bassford's alleged interest in the liquor license at issue. The issue of Mr. Bassford's possible interest in the license was raised by one of the opponents, Jim Rogers, a resident of Galesville. After Mr. Rogers testified that the opponents "believe the real applicant here is Mr. Bassford," the principal applicant for the license, Mr. Woodfield, was recalled, and the following colloquy is set forth in the record:

> "CHAIRMAN OF BOARD: Mr. Woodfield you are under oath.
>
> "WOODFIELD: Yes sir.
>
> "CHAIRMAN: What's Mr. Bassford's involvement if any in this license?
>
> "WOODFIELD: Mr. Bassford owns the property, the owner of the business is Annapolis Produce, I work for Annapolis Produce.
>
> *  *  *
>
> "CHAIRMAN: Okay, so what's Mr. Bassford's financial interest in this licence?
>
> "WOODFIELD'S ATTORNEY: None.
>
> "CHAIRMAN: Mr. Woodfield is that your testimony under oath?
>
> "WOODFIELD: Yes."

Whether or not Mr. Woodfield's testimony was credible was a matter for the trier of facts, here the Liquor Board. While the Circuit Court or the majority of this Court's panel may believe that Mr. Woodfield's testimony was not credible, neither the Circuit Court nor this Court is the judge of credibility. Mr. Woodfield unequivocally testified at the administrative hearing that Mr. Bassford had no financial interest in the license being applied for, and the Liquor Board was entitled to credit that testimony.

The majority relies heavily on the testimony of Jim Rogers who, as pointed out above, initially raised the question of who would control the liquor license at issue. The majority points out that Rogers "claimed that the 'real applicant here is Mr. Bassford.'" (Opinion at 704–05, 886 A.2d at 947). A "claim" or allegation, however, is not evidence. At the administrative hearing, after Rogers made the ownership allegation, the Liquor Board attempted to discover from Rogers what evidence he had of Bassford's ownership interest in the license being applied for. The testimony was as follows (emphasis added):

"ROGERS: Let me distill this down to about three sentences. We believe that the real applicant here is Mr. Bassford and that we are talking about an application that is in contravention of a number of rules of this Board. . . .

"CHAIRMAN: Now Mr. Bassford as I understand from the testimony we have heard is the landowner.

"ROGERS: Mr. Bassford

"CHAIRMAN: Isn't that right?

"ROGERS: Is the land owner, he is the land owner of Topside, he is the owner of Steamboat. . . .

"CHAIRMAN: *So what evidence do you have to present to us that he is the actual applicant,* real party in this. . . .

"ROGERS: Well I think with a little bit of discovery of Mr. Woodfield *we could probably decipher the relationship* between Mr. Bassford and Mr. Woodfield. . . .

         *    *    *

"CHAIRMAN: You, you've raised a[n] issue here that, that concerns me and I know it concerns this Board and the issue that, that I believe you are trying to raise here Mr. Rogers is that there is a silent partner, a silent owner in this establishment.

"ROGERS: That's exactly right.

"CHAIRMAN:  Okay and *I'm asking you* besides the fact that Mr. Bassford, is that

"ROGERS:  Bassford.

"CHAIRMAN:  Bassford owns the land where this license is located, okay *what other evidence do you have* that he as aside from a landlord tenant relationship any other financial interest in this license?

"ROGERS:  Huh, without a subpoena, a court reporter and a deposition I *probably can't answer that.*"

Therefore, Rogers had no evidence to present to the Liquor Board showing that Bassford was the real applicant for the liquor license at issue.

The majority also appears to rely upon hearsay evidence of a community meeting at which Mr. Bassford allegedly declined to answer questions concerning the financial interests in the proposed Woodfields Restaurant and at which Mr. Woodfield did not say anything.  (Opinion at 705, 886 A.2d at 947). In fact, the majority opinion repeatedly relies on "silence" that "was deafening and damning," upon the "wall of silence," and upon counsel's statement in this Court that she did not know of Bassford's interest in two other restaurants.  (Opinion at 710–11, 886 A.2d at 950–51).  None of this demonstrates that the Liquor Board's decision, which was based on evidence, was unsupported.  The "silence," in context, does not even constitute conflicting evidence regarding the ownership interest in the license at Woodfields Restaurant.  Furthermore, at the administrative hearing, Mr. Woodfield's testimony explained his silence at the community meeting;  he testified that he did not speak at the meeting because "nobody asked me any questions ... [and] they asked Mr. Bassford to come and speak."  Finally, under the plain wording of the statute, as well as settled principles of Maryland administrative law, the burden is upon the plaintiffs-appellees to demonstrate that the Liquor Board's finding, concerning ownership of the subject license, was unsupported by substantial evidence.  "Silence"

with regard to the ownership issue does not assist the plaintiffs-appellees in complying with their burden of proof.

Some of the evidence before the Liquor Board, and much of the discussion in the majority's opinion, relates to Mr. Bassford's alleged ownership interest in two other restaurants with liquor licenses. This evidence would be material if the plaintiffs-appellees had established that Mr. Bassford had an interest in the license at issue. The evidence and discussion regarding Mr. Bassford's possible interest in other restaurants or other licenses, however, has no pertinence with regard to the question of whether he has an interest in the license granted by the Liquor Board in this case.

The majority opinion also relies heavily upon a document which was not admitted into evidence before the Board and is not part of the administrative record. It was also not admitted into evidence before the Circuit Court. The document is a Dunn and Bradstreet report concerning Mr. Bassford's alleged relationship to a business called Annapolis Produce. The document is not something of which judicial notice could be taken. Consequently, the majority's reliance upon this document violates the most elementary rules of administrative procedure and appellate procedure. Moreover, de novo judicial review of an adjudicatory administrative decision, particularly at the Court of Special Appeals level, cannot be squared with Article 8 of Maryland constitutional principles. *See Department of Natural Resources v. Linchester*, 274 Md. 211, 224–226, 228–229, 334 A.2d 514, 523–524, 525–526 (1975).

If an adjudicatory administrative agency erroneously refuses to admit an item of evidence at a hearing, such error does not cause a particular finding of fact to be unsupported by substantial evidence. Instead it is a procedural error. If prejudicial, the normal remedy would be for the reviewing court to remand the case to the agency for a new hearing with the item of evidence admitted and considered.[11] *Holiday Spas*

---

11. I am not suggesting, however, that the Liquor Board's evidentiary ruling in this case was either erroneous or prejudicial. The issue is not before us.

*v. Montgomery County,* 315 Md. 390, 400, 554 A.2d 1197, 1202 (1989), and cases there cited. Art. 2B, § 16–101(e)(4)(ii), however, expressly permits remands to Liquor Boards in certain specified counties, not including Anne Arundel County.[12]

Nevertheless, Art. 2B, § 16–101(e)(1)(i), somewhat alleviates this problem, as the statute grants to the Circuit Court the discretion to hear additional evidence. The plaintiffs-appellees, in the Circuit Court, argued that the Liquor Board erred by not permitting them to present certain evidence, and they moved for permission to present additional evidence in the Circuit Court. The Circuit Court, however, held that the Liquor Board did not err in its evidentiary ruling and that the Board "allowed Mr. Rogers the opportunity to present additional evidence but he declined to do so. . . . Accordingly, the Court finds no error on this point." In a separate order, the Circuit Court denied the motion to permit additional evidence in court. These rulings by the Circuit Court have not been challenged on this appeal.

In sum, the Liquor Board's finding that Mr. Bassford did not have an ownership interest in the liquor license being applied for was supported by direct evidence. The opponents were given the opportunity at the administrative hearing to

---

**12.** Neither in the instant case, nor in any other reported case of which I am aware, has a litigant challenged the constitutionality of this implicit prohibition upon a remand in certain counties. Under Articles 8 and 19 of the Maryland Declaration of Rights and Article IV of the Maryland Constitution, there is ordinarily a constitutional right to judicial review of an adjudicatory administrative decision. *Edwards v. Corbin,* 379 Md. 278, 298 n. 8, 841 A.2d 845, 857 n. 8 (2004), and cases there cited. On the other hand, under Article 8 of the Declaration of Rights, such judicial review cannot be de novo or expansive. *Department of Natural Resources v. Linchester,* 274 Md. 211, 224–229, 334 A.2d 514, 523–525 (1975). *See also Cromwell v. Jackson,* 188 Md. 8, 52 A.2d 79 (1947) (statute authorizing a circuit court to issue a liquor license held to be unconstitutional). It may be arguable, under some circumstances, that a remand to an administrative agency for further proceedings is the only feasible way, consistent with due process, to preserve the constitutional right of judicial review but stay within the constitutional limitation. As pointed out above, no such constitutional issue has been raised in this case.

present contrary evidence, and they failed to do so. It is not the appropriate function of the judiciary to provide a remedy for the opponents' failure.